(88 South. 582)

**CHURCHILL v. WALLING.** (8 Div. 290.)

(Supreme Court of Alabama. April 14, 1921.)

**1. Warehousemen ⬤34(4) — Complaint for failure to exercise care in storing not demurrable.**

A complaint which alleged that plaintiff on certain dates stored cotton with defendant, a public warehouseman, paying the charges, and that "through lack of ordinary care and diligence" the cotton became stained and rotten and molded was not subject to demurrer under Acts 1915, p. 661, § 21, requiring a warehouseman to exercise the care of a reasonably careful owner of similar goods.

**2. Warehousemen ⬤34(6)—Proper for owner to show cotton was in good condition when it left plantation for defendant's warehouse.**

In an action against a warehouseman for damages sustained by the owner of cotton through failure to exercise required care in its storage, the condition of the cotton at the time of its delivery to the warehouseman was a material inquiry, so that it was proper for plaintiff to show that it was in good condition when it left his plantation.

**3. Warehousemen ⬤34(6) — Testimony of plaintiff owner of cotton as to amount picked off bales inadmissible against defendant warehouseman.**

In an action against a warehouseman for damages sustained by the owner of cotton through failure to exercise required care in its storage, the trial court erred in permitting plaintiff owner of the cotton to testify, over defendant warehouseman's objection, that between $2,700 and $3,500 worth of cotton was picked out of the bales for which he received no pay.

**4. Appeal and error ⬤1050(1)—Admission of testimony in action against warehouseman prejudicial.**

In an action against a warehouseman for damages sustained by the owner of cotton through failure to exercise required care in its storage, erroneous admission of testimony of plaintiff owner that between $2,700 and $3,500 worth of cotton was picked off the bales for which he received no pay *held* prejudicial to defendant warehouseman.

**5. Evidence ⬤497—Hypothetical question, put to cotton expert who purchased plaintiff's cotton, proper.**

In an action against defendant warehouseman for damages sustained by the owner of cotton through failure to exercise required care in its storage, objection to a hypothetical question, as to whether he would dock cotton brought in wet, put to a cotton expert who purchased plaintiff's cotton, should have been overruled; the witness' admissions on the point involved having a material bearing on the litigation.'

**6. Evidence ⬤408(7)'—Warehouseman's receipt for cotton held subject to explanation.**

As between the owners of cotton and a warehouseman, the warehouseman's receipts were of a dual nature, partaking both of the character of a contract and of a receipt; considered as a receipt, one of them was subject to explanation by parol in its language that the cotton was in a damaged condition when received.

**7. Bailment ⬤31(1)—Warehousemen ⬤34(5)—Burden on bailee or warehouseman to acquit himself of want of diligence.**

If there be injury to goods during the bailment, the burden devolves on the bailee or warehouseman to acquit himself of want of diligence in respect thereto.

**8. Warehousemen ⬤34(5)—Burden on owner of cotton to prove damage due to negligence.**

Where the receipt for cotton accepted by the owner from defendant warehouseman sued for damage thereto expressly stated the cotton was received in a damaged condition, though such language was subject on the part of the owner to explanation by parol testimony, it was not deprived of all effect, in view of the Uniform Warehouse Receipt Act, § 3, and no presumption of law or of fact arises relative to damage of the cotton against defendant warehouseman, but the burden rests throughout on plaintiff owner to satisfy the jury the damaged condition of the cotton was produced by want of ordinary care or prudence on the part of the warehouseman as to the storage thereof.

Appeal from Circuit Court, Morgan County; O. Kyle, Judge.

Action by W. J. Walling against A. F. Churchill for damage to cotton while stored in defendant's warehouse. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Suit by appellee against appellant, tried upon count 1 and the general issue thereon. Count 1 is as follows:

"Plaintiff claims of the defendant the sum of $3,000 as damages for that the defendant is now, and was during the month of November,

1918, and in the interim, engaged in the business of a public warehouseman, and storing, handling, and caring for cotton for a reward, and on, to wit, the 20th day of November, 1918, the plaintiff stored with the defendant at its warehouse in Albany, Ala., 147 bales of cotton, and, on to wit, the 16th day of January, 1919, the plaintiff stored with the defendant at its said warehouse, 24 bales of cotton, all of which the defendant agreed to keep for the plaintiff and to exercise ordinary care and diligence in the care of the same; and the plaintiff paid to the defendant the charges required and demanded of him for such services.

"And plaintiff avers that through lack of ordinary care and diligence the said cotton, while at the defendant's warehouse, became stained and rotten and molded and decreased in value, to his damages as aforesaid."

Demurrer to this count was overruled.

The plaintiff owned a plantation 25 miles from Albany, where defendant's warehouse was located; and in September, October and November, 1918, the plaintiff operated a gin on said plantation, and all the cotton stored with the defendant was there ginned. When the cotton was ginned it was thrown out into the lot, and later moved a distance therefrom and stacked along the public road. Some of the plaintiff's evidence showed that this cotton was placed on the grass, and other evidence that it was placed on cedar poles, and turned over twice a week while on the plantation, but was rained on several times while on plaintiff's premises. In November, 1918, the plaintiff moved 147 bales, and late in January moved 24 bales of the cotton from his plantation to the river, loaded it on a barge to be forwarded to Decatur, and in so. moving several of the bales were wet and became muddy. The cotton on the barge, being exposed, was rained on during the night, and on reaching Decatur some few of the bales fell into the river, while others were rolled on the river bank, getting mud on a number of them. Plaintiff testified that he supposed nearly all of the bales had more or less mud on them, some more than others; that the rain had gotten through the bagging, but the mud had not.

In this condition the cotton was delivered to the defendant at his warehouse. Receipts were issued therefor, and upon the face of these receipts, following the word "condition," were the words "wet, muddy and damaged," or on some of them the words "all wet and damaged." The plaintiff insists that he protested against this character of receipt, and that the cotton was not damaged. The evidence for the defendant tends to show that defendant's agent and plaintiff went to look at the cotton after this protest was made, and plaintiff conceded it was worse than he had thought. Plaintiff insists that he took the receipt in this manner, and that defendant promised to dry out the cotton on the platform and then store it. The defendant did store the cotton in rows on the platform, where it was rained on a number of times.

Plaintiff's evidence tended to show that the cotton was not permitted to dry out, and then stored in the warehouse under shelter, but was taken under the shelter in a wet condition, and stored, bale on bale, as high as the ceiling, with no space in between, and that this was improper, and caused the cotton to mold and rot, causing him damage. Defendant offered proof tending to show the cotton was left on the platform in order for it to dry, and was changed frequently, and afterwards was placed under shelter in such a way that the air could get to all the parts, and this was the proper manner of storing. Defendant's evidence also went to show the cotton was damaged at the time it was delivered, and merely remained so.

In April, 1919, the cotton was delivered to the plaintiff, who sold the same to one Kortretch under an agreement that the latter was to recondition the cotton, that is, pick the damaged part off of it, and was to receive the pickings free of charge and pay the plaintiff 24⁹⁵/₁₀₀ cents for the cotton. The cotton was moved on the platform and reconditioned by two cotton men. The evidence for the defendant tended to show the cotton was picked heavily, that is, too much picked off, and that Kortretch paid the plaintiff for good cotton at the rate of 24⁹⁵/₁₀₀ cents per pound, while cotton was worth 26 cents per pound.

Plaintiff was permitted to show, over defendant's objection, the condition of the cotton when it left the gin for Decatur. The plaintiff, while a witness in his own behalf, was asked to state "how much was picked off the cotton that you did not get pay for?" to which defendant objected. The objection being overruled, the witness answered, "About $2,700 or $3,500." Defendant's motion to exclude this answer was overruled. Witness Kortretch was examined for the plaintiff, as an expert in cotton and the man who bought plaintiff's cotton, and was asked on cross-examination the following question:

"For instance, if cotton had been ginned in September and October, and thrown out on the gin lot, and gotten dirt on it, and then stacked up out in the open, and probably got more dirt on it, and then was allowed to be exposed to the weather from that time up until November, and then was rained on, all the night of the 20th of November, we will say, and was brought to you in a wet condition, you would dock those bales of cotton, wouldn't you?"

Plaintiff's objection to this question was sustained, and exception reserved.

The court charged the jury that the statement in the receipt as to the damaged condition of the cotton was not absolutely binding on the plaintiff, but he had a right to explain the same. To this exception was reserved by defendant. The following charge

was requested by the defendant, which was refused:

"If you believe from the evidence that the cotton was damaged at the time of its delivery to the plaintiff or his transferees or vendees, this fact would not raise the presumption of negligence against the defendant that the cotton was damaged while stored with the defendant."

There was verdict and judgment for the plaintiff in the sum of $1,500, from which the defendant prosecutes this appeal.

Eyster & Eyster, of Albany, for appellant.

Demurrer to count 1 should have been sustained. Acts 1915, p. 661, § 21. Warehouse receipt is a contract of parties, and its terms cannot be varied by parol evidence. Acts 1915, p. 66, 51 Ill. 482, 99 Am. Dec. 568. Counsel discuss other assignments of error, but without further citation of authority.

Callahan & Harris, of Decatur, for appellee.

Count 1 was sufficient. 80 Ala. 465, 2 South. 633. As between the parties, the warehouse receipts were a contract and receipt, and as receipts were subject to explanation by parol evidence. 167 Ala. 311, 52 South. 891; 20 Okl. 654, 95 Pac. 417; 215 Fed. 886, 132 C. C. A. 226; 87 Ark. 26, 112 S. W. 154, 128 Am. St. Rep. 17. Counsel discuss other assignments of error, but without further citation of authority.

GARDNER, J. Plaintiff recovered judgment against the defendant for damages, which he insists were sustained by the failure of the defendant to exercise that required degree of care in the storage of cotton left with the defendant as a warehouseman.

[1] The cause was tried upon count 1, which will appear in the statement of the case. We think it needs no discussion to show that this count was not subject to demurrer interposed thereto. Section 21, Acts 1915, p. 661; Haas v. Taylor, 80 Ala. 459, 2 South. 633.

[2-4] The condition of the cotton at the time of its delivery to the defendant was a very material inquiry, and a disputed question in the case. It was proper, therefore, for the plaintiff to show that it was in good condition when it left his plantation. We are of the opinion, however, that the court erred in permitting the plaintiff to testify, over defendant's objection, that between $2,700 and $3,500 worth of cotton was picked off of the bales, for which he received no pay. Plaintiff was not present when the cotton was reconditioned, and did not himself know how much was picked off, leaving that entirely to Kortretch, to whom he gave these pickings. There is proof tending to show that the pickings had a very substantial value, and it was plaintiff's duty to minimize, rather than increase his damage, but under his contract he was to receive no benefit whatever from these pickings. Under the proof, therefore, the evidence was patently bad, and the objection, though general, should have been sustained. Nor are we persuaded, by the amount of the verdict rendered, that the jury was not misled or influenced by this testimony.

[5] The witness Kortretch was a cotton expert, and the one to whom the plaintiff sold this cotton. The testimony of plaintiff showed that he received a fraction over a cent per pound less for his cotton on account of its damaged condition, and that such damaged condition was due to the lack of ordinary care and prudence on the part of the defendant. But there was evidence tending to sustain the facts set out in the hypothetical question put to witness Kortretch by defendant, which will appear in the statement of the case. The objection to this question should have been overruled. Had the witness answered, under the circumstances set forth in the question, he would have docked the cotton as much as he in fact did dock it at the time he purchased, then this answer would have been very material to show that the market value had not been affected, nor the cotton damaged while in defendant's possession. This was the pivotal point in the case and the admissions from the witness to this effect would have had a most material bearing upon this aspect of the litigation. We are of the opinion the court erred in sustaining the objection thereto.

[6] Defendant's counsel insist that the court erred in the oral charge in stating to the jury that the language in the warehouse receipt, to the effect that the cotton was in a damaged condition, was not absolutely binding upon the plaintiff, but he had a right to explain the same. To this we do not agree. As between the parties these receipts were of a dual nature, taking both of the character of a contract and of a receipt; considered as a receipt, it was subject to explanation by parol. A. G. S. R. R. Co. v. Norris, 167 Ala. 311, 52 South. 891; St. L., I. M. & S. R. R. Co. v. Citizens' Bank, 87 Ark. 26, 112 S. W. 154, 128 Am. St. Rep. 17.

There was here involved no question as to an innocent purchaser, and therefore the court committed no error in charging the jury that the plaintiff was not absolutely bound by the language of this receipt, but could in fact show that the cotton was not in a damaged condition at the time of its delivery to the defendant.

[7] The court refused the written charge requested by the defendant, to the effect that the fact that the cotton was damaged at the time it was delivered to the plaintiff did not raise the presumption of negligence against the defendant that it was damaged while in storage. In support of this action of the court, counsel for appellee cite the case of Davis v. Hurt, 114 Ala. 146, 21 South. 468,

where it is in effect held that, if there be injury to goods during the bailment, the burden devolves upon the bailee to acquit himself of the want of diligence in respect thereto. This but states a well-recognized rule. 40 Cyc. 470.

[8] We think, however, the facts of this case take it from out this general principle. The receipt accepted by the plaintiff upon the storage of his cotton expressly stated that the cotton was received in a damaged condition. While this is subject, on the part of plaintiff, to explanation by parol testimony, yet the language is not to be deprived of all effect. As said in St. L., etc., R. R. Co. v. Citizens' Bk., supra:

"As a receipt, it is prima facie, although not conclusive, evidence of facts therein recited."

Section 3 of the Acts of 1915, supra, known as the Uniform Warehouse Receipt Act, expressly provides that a warehouseman may insert in a receipt issued by him any other terms and conditions:

"Provided that such terms and conditions shall not—(a) be contrary to the provisions of the act. (b) In any wise impair his obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

If the insistence of plaintiff be correct, then this language in the receipt is of no force. We are therefore of the opinion that under such circumstances as here disclosed, no presumption of law or fact arises against the defendant, but the burden rested throughout upon the plaintiff to reasonably satisfy the jury that the damaged condition of the cotton was produced for want of ordinary care and prudence on the part of the defendant as to the storage thereof.

For the errors indicated, the judgment is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and MILLER, JJ., concur.