(137 So. 33)

## WATSON et al. v. HARDAWAY–COVINGTON COTTON CO.

### 3 Div. 965.

Supreme Court of Alabama.
Oct. 15, 1931.

444

T. E. Martin and Steiner, Crum & Weil, all of Montgomery, and J. A. Mulkey and W. O. Mulkey, both of Geneva, for appellants.

Thos. B. Hill, Jr., and Wm. Inge Hill, both of Montgomery, for appellee.

THOMAS, J.

The rules of evidence are important in every trial, and the assignments of error are based thereon. The several rulings are duly grouped and so considered.

The evidence was to the effect that the cotton in question was exposed to the flood waters in the spring of 1929; that during March or April, defendant's representatives inspected the cotton at Geneva and had a conference with the agents of plaintiffs as to reconditioning the same. The evidence as to what there transpired and what was agreed upon is in conflict. The jury returned a verdict for the defendant.

The contention of plaintiff was that there was a guaranty that cleaning and reconditioning made the cotton spinable and restored the same as it was before exposed to the flood waters, and with negligible loss in weight; that the process agreed to be employed was the picking and sun-drying process rather than another that was discussed between the parties.

It is agreed that the cotton was permitted to remain in the bale, on the streets of Geneva, from the date it was submerged (March 15 to 17, 1929) until shipped to Montgomery, and that it was four or five days in closed box cars in transit and received in Montgomery from April 8th or 10th to over a period of one week, and each car was unloaded immediately on arrival.

Its condition on arrival may be stated from the evidence to have been, according to witness Samuels, "heated, muddy, and discolored, two or three bands were off of it, of the hoops, it was all flared out and was heating, discolored and muddy, and the staple was deteriorating." Mr. Olin testified that "it was very wet" and some of it damaged; "there was some staple deterioration," and was very much discolored and "was caking up"; that it was perishing when it caked up, and some was very hot; that that condition had been going on for fifteen or twenty days. The effect of Mr. Keith's testimony was that it was water-soaked and congealed, and the bagging had been torn open on many bales and the cotton was heating. According to witness Beale's testimony, the "wet ends of bales were rotten and slimy, and heads were bursted open." Witness Giovanni said of its condition that "it was wet on one head thoroughly, and one or two bands off of each bale; that it was very wet and ragged, and badly discolored and heating * * * that it would start to heat within ten days

to two weeks from the time it was soaked." Mr. Covington testified that "it was heating and had mud on the end."

It is further shown without dispute that immediately upon the receipt of the cotton, it was unloaded and dismantled, and the wet and dry cotton separated, and the dry cotton rematched and rebaled; that the wet cotton was pulled apart, placed in windrows to dry in the sun in the daytime, taken in at night to protect it from the dew and weather, and, according to the defendant's witness, handled as carefully and expeditiously as it could be handled; that Covington gave it his personal attention. There was no dispute between the witness Giovanni's and Covington's testimony as to this feature. That the plaintiffs or Mr. J. P. Watson came to Montgomery in response to a letter from Mr. Covington to the effect that the cotton was in a rotten and deteriorated condition, and went to the yard where it was being reconditioned. The plaintiffs said they did not notice or know whether the cotton they looked at was their cotton or not; that they did not ask to see their cotton while in the cotton yard, but that the cotton they saw was partly rotten and in pretty bad shape; that they made no complaint to Mr. Covington about the process or method in which he was handling their cotton.

It is undisputed that the defendant notified the plaintiffs on June 1st that the work had been completed, sending them at that time a statement of the results obtained, showing the number of bales and weight of straight cotton, number of bales and weight of samples, and the number of bales and weight of pickings No. 1 and pickings No. 2; that on June 21st the plaintiffs received, in response to a request, a letter showing the grades of their straight cotton, and on July 30th, or August 1st, the defendant learned that the plaintiffs were making objections to the results obtained, by the receipt of a letter. Suit was filed on March 28th, following, just two days before the expiration of one year from the date of alleged contract, and ten months after the results of the work were known.

This statement of the evidence is sufficient to disclose the issues here involved.

■ Where the suit is for negligent handling and reconditioning of cotton, evidence as to the true condition of the cotton at the time of its delivery to the defendant at Montgomery for reconditioning is material to the issue and admissible. The questions to the several witnesses were within the rule of Churchill v. Walling, 205 Ala. 509, 88 So. 582; Hood v. Disston & Sons, 90 Ala. 377, 7 So. 732.

■ The fact that a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper. The general rule that a witness should narrate the evidence, give the facts, details, and circumstances, and let the jury form the opinion draw the conclusions from the testimony, is subject to an exception where the subject involves the opinion of an expert. He may base his answer on actual knowledge of the fact or on a proper predicate informing him of the fact or condition. It is unnecessary to reproduce the recent decisions on this question, or restate the well-understood rule. Penton v. Penton (Ala. Sup.) 135 So. 481; [1] Jones v. Keith (Ala. Sup.) 134 So. 630; [2] Yates v. Barnett, 215 Ala. 554. 112 So. 122; Burton & Sons v. May, 212 Ala. 435, 103 So. 46; Oden-Elliott Lumber Co. v. Daniel-Gaddis Lumber Co., 210 Ala. 582, 98 So. 730; Sloss-Sheffield S. & I. Co. v. Reid, 184 Ala. 647, 64 So. 334; Harbison-Walker Refractories Co. v. Scott, 185 Ala. 641, 64 So. 547; Williamson Iron Co. v. McQueen, as Adm'r, 144 Ala. 265, 40 So. 306; Choate v. Southern Ry. Co., 119 Ala. 611, 24 So. 373; Hood v. Disston & Sons, 90 Ala. 377, 7 So. 732.

Moreover, aside from the fact that there was objection to opinion evidence sought to be elicited from Mr. Brame, who had qualified as an expert under the rule of evidence indicated in the foregoing authorities, he (Brame) was competent to have testified; the court, on motion of plaintiff, stated that he ruled out Mr. Samuels' testimony "as an expert" and left in the "way he saw the cotton and whether or not the cotton would heat," and "heating in certain conditions," but ruled out the "question of whether or not it was done in a workmanlike manner." We find no reversible error, available to plaintiff to reverse.

■ Counsel contend that evidence of care and skill vel non, employed and exercised by defendant in handling and reconditioning the cotton, was irrelevant and incompetent. The first count declared for that defendant had failed to rework said cotton in such manner as that the grade would not be affected; and the second count charged breach of the contract to rework the cotton in such manner as that the same would be spinable, and no considerable loss in weight. The pleading of defendant is in short by consent, with leave to give in evidence other defenses which might be specially pleaded. The complaint charges not only negligence, but active conduct, as rendering the cotton unspinable. The case of Churchill v. Walling, 205 Ala. 509, 88 So. 582, is authority for showing the condition of the cotton at the time of delivery, and in the instant

[1] Ante, p. 282.
[2] Ante, p. 36.

**446**

case the condition of the cotton in question before and at the time of receipt in Montgomery, to aid the jury in reaching a proper conclusion as to defendant's obligated duties in the premises to that subject matter.

In the case of Hood v. Disston & Sons, 90 Ala. 377, 7 So. 732, 734, the court said: "If of inferior material in such sort as that no method of treatment by defendants, however skillful, could have resulted in a valuable product, it is impossible to conceive how any claim for damages could accrue to the plaintiff, even though the work had not been done by defendants in a workmanlike manner, and well, since, whether so done or not, the article is equally valueless. These considerations make it manifest to our minds that one essential element of plaintiff's right of recovery in the present action was that he furnished material of such quality that the blades could by proper treatment have been efficiently hardened and tempered. Until that fact appears, it is not shown that any damage was done the plaintiff by defendants' want of skill or care in tempering the metal. It follows that the burden of proving this fact was on the plaintiff."

We find no reversible error challenged by assignments of error from one to nine inclusive, as to introduction of evidence of qualified experts.

The tenth assignment of error is: "In overruling objection of the plaintiff to the question propounded by the defendant to the witness Mr. Covington, 'Do you recall the price of cotton on the day the suit was filed?' (Record page 51)."

The verdict was against the plaintiffs, and the right of recovery and the ruling of the court relating to the amount of recoverable damages, though erroneous, cannot be made the basis of reversal here. Roll v. Dockery, 219 Ala. 374, 122 So. 630, 65 A. L. R. 1473, and authorities collected; Kern v. Friedrich, 220 Ala. 581, 126 So. 857, and authorities; rule of Shelby Iron Co. v. Bierly, 202 Ala. 424, 80 So. 806, as to prejudicial error; Dorough v. Alabama Great Sou. R. Co., 221 Ala. 305, 128 So. 602.

The elementary principle of the law is that the verdict of the jury should not be disturbed, and a new trial ordered, unless it is clearly and palpably evident that the verdict was contrary to the great preponderance of the testimony, or founded on prejudice, or some other basis than the evidence (Jena Lumber Co. v. Marlowe Lumber Co., 208 Ala. 385, 94 So. 492; Nashville, C. & St. L. R. Co. v. Crosby, 194 Ala. 338, 70 So. 7; Cobb v. Malone, 92 Ala. 630, 9 So. 738), or decidedly wrong and unjust.

We have examined the evidence and will not, under the rule that obtains, disturb the verdict rendered for defendant.

Affirmed.

ANDERSON, C. J., and BROWN and FOSTER, JJ., concur.

