This is a dispute over the enforceability of a noncompetition clause in a contract entered into between Ellis M. Files and Avery Bird Schaible.
Briefly, the facts are as follows:
Appellant Files operated the Ellis Red Barn Restaurant in Demopolis, Alabama, until a fire caused significant damage to the building in which the restaurant was housed. Files decided not to reopen the restaurant and spoke with Jim Bird, the owner of the building in which it was located, regarding the possibility of Files's selling his restaurant equipment to Bird's daughter, Avery Bird Schaible, and teaching her the restaurant business. At that time Bird requested that, if an agreement was reached between Schaible and Files, Files agree not to go into competition with Schaible.
The agreement reached is represented by the following writing:
 "KNOW ALL MEN BY THESE PRESENTS, that I, Ellis Files, in consideration of TEN DOLLARS ($10.00) and *Page 259 
other good and valuable consideration to him paid by Avery Bird Schaible, the receipt whereof is hereby acknowledged, do bargain, sell and deliver to said Avery Bird Schaible the following goods and chattels: The restaurant equipment, inventory, office equipment and other goods and chattels connected with the restaurant business located in Ellis' Red Barn, located on U.S. Highway 80 in Demopolis, Marengo County, Alabama. The vendor agrees that he will not for the period of five (5) years from the date hereof assume ownership of any restaurant business within the radius of five (5) miles of the City of Demopolis, Alabama, provided, however, that his agreement shall not preclude the vendor from engaging in the catering business.
 "Witness my hand and seal this 6th day of June 1978.
"/S/ Ellis Files (L.S.)"
Once repairs were completed on the restaurant building, in May of 1978, Schaible opened her restaurant and called it "The Red Barn." Files worked with Schaible for several weeks thereafter in order to teach her the business and to provide her with introductions to his regular customers. At Files's suggestion, during that period, Schaible sponsored a party for a number of Files's regular customers.
In early 1979, a restaurant called "Ellis V" began operating across the street from the Red Barn Restaurant. Schaible brought suit against Files, alleging Ellis V was owned and operated by Ellis Files, and that he had breached his covenant not to assume ownership of a restaurant within a five-mile radius of the Red Barn for a period of five years. After trial, a jury returned a verdict for Schaible and fixed her damages at $50,000. Judgment was entered accordingly.
Files appealed after the trial court denied his motion for judgment notwithstanding the verdict or for new trial. He raises four issues:
 "(1) Did the court err in failing to grant the defendant a new trial or a judgment notwithstanding the verdict when the plaintiff failed to prove the existence of any consideration for the alleged sale of good will?
 "(2) Did the court commit reversible error when it allowed the plaintiff to proceed in a lawsuit on an alleged breach of a covenant not to compete when there was no sale of good will?
 "(3) Did the court commit reversible error by failing to grant a motion for a new trial or in the alternative judgment notwithstanding the verdict in favor of the appellant when the testimony proved that the appellant had not breached a contract made the basis of this suit by assuming ownership of a business?
 "(4) Did the court commit reversible error in denying the defendant's motion for a new trial on the grounds that the damages could not be traced to the alleged breach of contract and are so remote and speculative as to be unrecoverable?" (Citations omitted.)
Prior to our discussion of those issues, we should note that all favorable presumptions will be afforded by this court to the correctness of the jury's verdict, and that verdict will not be disturbed unless it is clearly divergent from the evidence and the law. Baswell v. Wilks, 57 Ala. App. 98,326 So.2d 292 (1976). These presumptions are strengthened because the trial court refused to grant a new trial or enter judgment notwithstanding the verdict. Birmingham Southern R. Co. v.Ball, 271 Ala. 563, 126 So.2d 206 (1961).
 I
The first two issues presented by Files on appeal concern whether there was a sale of good will of the business. That is relevant because § 8-1-1, Code 1975, provides that all contracts by which one is restrained from exercising a lawful trade, business, or profession is void, unless allowed by subsections (b) or (c) or that statute. Subsection (b) permits the seller of the good will of a business to agree with the buyer to refrain from carrying on or *Page 260 
engaging in a similar business. Subsection (c) is not applicable in this case.[1]
Files alleges there was no sale of good will because: (1) There was no express mention of the sale of good will in the written agreement; and (2) There was no consideration for the sale of good will.
It is well settled that, in order for a covenant not to complete to be valid when executed in connection with a sale of a business, it is not necessary that the contract of sale specifically state the transaction includes a sale of good will. This court held, in Maddox v. Fuller, 233 Ala. 662,173 So. 12 (1937):
 "It is not necessary that the contract specifically mention a sale of the business, nor the good will thereof. The taking over of the same business by the vendee, and the covenants designed, in the nature of them, to protect the good will, which in much consists in the disposition of customers to continue to do business of the same kind at the same place, imply a sale of the good will, and all the circumstances may be averred and proven to show such intent. Smith v. Webb, 176 Ala. 596, 58 So. 913, 40 L.R.A. (N.S.) 1191; J.L. Davis, Inc. v. Christopher, [219 Ala. 346, 122 So. 406] supra; Moore Handley Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 6 So. 41, 13 Am.St.Rep. 23."
233 Ala. at 665, 173 So. at 14-15. See also Yost v. Patrick,245 Ala. 275, 17 So.2d 240 (1944).
The tendency of the evidence in this case is that Files intended to sell the good will of his restaurant. Representative is evidence that Schaible took over Files's restaurant operation; Files agreed to include the covenant not to compete in the written agreement; Files spent considerable time teaching Schaible the restaurant business, and introduced her to his best customers. We find Files's contention that there was no sale of good will untenable because all the circumstances surrounding the transaction between Files and Schaible clearly imply a sale of the good will of the business.
 II
Second, Files contends that because the written agreement, containing his agreement not to compete, does not express consideration specifically for the covenant not to compete, that covenant is not enforceable.
Adequate consideration exists, or is implied, if it arises from any act of the plaintiff from which the defendant derived a pecuniary benefit (i.e. the profitable sale of the restaurant business), if such act was performed by the plaintiff to the desired end, with the expressed or implied assent of the defendant. That which creates and carries a benefit to the party promising, or causes trouble, injury, inconvenience, prejudice, or detriment to the other party, is sufficient consideration. Cristie v. Durden, 205 Ala. 571, 88 So. 667
(1921). Conflicting evidence as to whether the consideration was adequate creates a question of fact to be determined by the trier of fact. Hyatt's Supply Co. v. Lyle, 222 Ala. 460,133 So. 3 (1931); Bush v. Russell, 180 Ala. 590, 61 So. 373 (1913).
The written agreement signed by Files can be interpreted, as Files urges, as two separate contracts. However, contrary to Files's assertion, each is supported by adequate consideration. That Schaible would not have entered the agreement for the sale of the restaurant equipment absent the covenant not to compete supplies sufficient consideration to support the obligation in that Schaible has thereby suffered a legal detriment. SeeNational City Bank of Mobile, v. Barrett, 217 Ala. 611,117 So. 55 (1928); Baumhauer v. McGill, 15 Ala. App. 433, 73 So. 753
(1917); First Alabama Bancshares, Inc. v. McGahey,355 So.2d 681 (Ala. 1978); Clayton and Associates v. McNaughton,182 So.2d 890, 279 Ala. 159 (1966). *Page 261 
 III
Files alleges Schaible failed to prove he assumed ownership of the restaurant called Ellis V. He contends he merely served as a paid employee for owner Dale Hunt and because the bill of sale made the basis of this suit contained no provision prohibiting him from working for another restaurant owner, this was not a prohibited assumption of ownership. He presented evidence that he received a salary from the restaurant and that all the tax and business records are in the name of a third party, that of Dale Hunt.
The transcript is full of evidence that Files had complete control and ownership of Ellis V and that Hunt was merely a front for Files in order to avoid the noncompetition clause in his agreement with Schaible.
The record reveals Files began negotiating with Margie Acker for the purchase of the Coach House Restaurant a short time after the Red Barn had opened under Schaible. Margie Acker testified that Files indicated he was negotiating for himself and asserted to her that the noncompetition clause in the agreement with Schaible would be no problem because he was going to put the Red Barn out of business.
Dale Hunt, a former waitress at Ellis Red Barn Restaurant, actually signed a lease/purchase agreement for the restaurant building and worked at the Ellis V in some capacity. There was, however, sufficient testimony to indicate she neither owned, leased, nor managed Ellis V.
Files testified that Dale Hunt had put $10,000 into the Ellis V Restaurant business. He testified he co-signed a note for that amount, but on deposition stated he did not co-sign that note. He also testified he paid the note off for Hunt.
There was evidence that Ellis actually paid leasing expenses incurred for the restaurant. He purchased the restaurant property under Hunt's lease/purchase option. All monies paid to Acker during the period the building was leased were applied to the purchase price for the building. It was undisputed that Files owned all the restaurant equipment used at Ellis V.
Furthermore, testimony was presented that Files managed the business without the help of Hunt. The chef at Ellis V testified that he was instructed by Files to take orders from no one except Files.
Most damaging to Files was testimony that he had told a number of people, prior to the opening of Ellis V, that he had managed to find a way to get around the noncompetition agreement with Schaible.
We find the great weight of the evidence supports Schaible's contention that Files actually owned and managed Ellis V and used Hunt to mask his ownership.
 IV
Last, Files argues the awarded damages were remote and speculative. We find, however, that damages proved by Schaible were considerably more than the amount awarded.
The law in Alabama regarding damages for breach of contract is clear. Damages should restore the injured party to the condition he or she would have occupied if the contract had not been violated, or had been fully performed. Coastal States LifeIns. Co. v. Gass, 278 Ala. 656, 180 So.2d 255 (1965).
These damages need not be measured with mathematical precision. The plaintiff only needs to produce evidence sufficient to afford a reasonable basis for estimating loss.Champion v. Gaines, 48 Ala. App. 484, 266 So.2d 150 (1972).
George Davis, accountant for Schaible, who had also been the accountant for Files while he owned the Ellis Red Barn Restaurant, testified regarding Schaible's monetary losses after Files opened Ellis V. His testimony included a detailed analysis of the Red Barn's business records during the eight months Schaible operated the Red Barn prior to the opening of the latter. In toto, losses established by the testimony of Davis amounted to $126,616. This amount includes a downward adjustment for Schaible's income from a collateral source *Page 262 
subsequent to the failure of the Red Barn Restaurant.
Additionally, Schaible presented substantial evidence that there were no reasons for loss of business besides the competition from Files, such as uncleanness, poor food quality, or poor service. She also presented evidence that a number of her regular customers patronized Ellis V rather than the Red Barn after Files began to operate that restaurant.
We find Schaible presented evidence sufficient to form a reasonable basis for establishing her losses pursuant to Files's breach of contract.
The rulings of the trial court being correct, and its review of the issues on motion for new trial having been correctly decided, the judgment below is due to be, and is, hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.
[1] For a more complete discussion of Alabama law concerning covenants not to compete, see Edwards, Covenants Not to Competein Alabama, 44 Ala. Law 306 (November 1983).