[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 878 
The defendant, S/M Industries, Inc., appeals from a judgment for Hapag-Lloyd, A.G., on claims alleging breach of bailment contract, conversion, and breach of duty by a public warehouse. We affirm.
The trial court entered an order succinctly setting out the facts, which are undisputed, and resolving the legal issues correctly. We adopt the trial court's order as the opinion of this Court.
 "FINDINGS OF FACT
"1. Hapag-Lloyd, A.G. is a corporation organized and existing under the laws of West Germany. Hapag-Lloyd, A.G. is a worldwide carrier of oceangoing cargo. Hapag-Lloyd, A.G. brings the present action on its own behalf and pursuant to an assignment of rights from Knud Erichsen Company (Testimony of Joann Daughdrill and Elmar Hafkemeyer, pages 8, 24; see also plaintiff's exhibit 13).
"2. Knud Erichsen Company is a corporation organized and existing under the laws of Denmark. In the present case, Knud Erichsen Company was at all times acting on behalf of the several manufacturers of the furniture comprising the shipment of goods to the United States (Testimony of Erik Sorensen, pages 7, 8).
"3. Scandinavian Import Systems was at all times relevant a furniture dealer operating in Daphne, Alabama and was the intended receiver of the goods or shipment here concerned (Testimony of Joann Daughdrill).
"4. Biehl Company was in 1987 and 1988 the steamship agent for Hapag-Lloyd, A.G. in the port of Mobile. As steamship agent Biehl's activities included the handling of cargo discharged at Mobile from Hapag-Lloyd, A.G. in Mobile. At trial plaintiff presented the testimony of Joann Daughdrill. Mrs. Daughdrill was at all relevant times the representative of Biehl Company who handled this shipment. Mrs. Daughdrill is no longer employed by Biehl Company. (Testimony of Joann Daughdrill)
"5. S/M Industries is a corporation organized and existing under the laws of the state of Alabama. S/M Industries began operating as a public warehouse in Mobile in August, 1987. S/M Industries received the shipment or goods here concerned for storage on October 12, 1987 (Testimony of David Boyes).
"6. The shipment here concerned consisted of shipping container HLCU435653-1 containing 737 cartons of new furniture. The container had been shipped on board the M/V GULF SPIRIT from Bremmerhaven to Mobile arriving on or about February 5, 1987. Prior to being placed in the container, the cartons of new furniture were collected in the warehouse of Knud Erichsen Company and there prepared for shipment to the United States. (Testimony of Erik Sorensen, pages 7, 8)
"7. The named shipper of the goods here concerned was Knud Erichsen Company. Hapag-Lloyd, A.G. issued an original bill of lading to Knud Erichsen Company *Page 879 
covering the goods contained in the shipment. Knud Erichsen 
Company in turn forwarded the original bill of lading to the First Alabama Bank in Mobile under instructions that the bill of lading was not to be released to Scandinavian Import Systems until full payment of the invoices forwarded along with the bill of lading were paid. The original bill of lading was later returned to Knud Erichsen Company when the intended receiver was unable to pay for the goods. After the return of the bill of lading to Knud Erichsen Company, the outstanding invoice amounts and charges against the cargo were to be paid to Knud Erichsen Company. (Testimony of Erik Sorensen, pages 8, 9, 10, 20, 21)
"8. Shortly before the arrival of the M/V GULF SPIRIT in Mobile, Biehl Company acting as agents for Hapag-Lloyd, A.G. contacted Scandinavian Import Systems to advise of the arrival of the container of furniture for which Scandinavian Import Systems was the intended receiver. Upon the arrival of the M/V GULF SPIRIT the container here concerned was discharged from said vessel and placed on the dock at Pier 2 of the Alabama State Docks. (Testimony of Joann Daughdrill)
"9. Shortly after the arrival of the shipment, Biehl 
Company again contacted Scandinavian Import Systems to inquire as to their intentions regarding the cargo. Biehl Company was advised that Scandinavian Import Systems had not been able to make financial arrangements so as to obtain the original bills of lading but were attempting to do so. The container remained on the docks from February, 1987 to October, 1987. During that period of time Biehl Company contacted Scandinavian Import Systems on several occasions inquiring as to their intent with regard to the cargo. On each occasion Biehl Company was advised that Scandinavian Import Systems was attempting to make arrangements to pay for the cargo. (Testimony of Joann Daughdrill)
"10. After an initial free time of approximately 10 days, while the container remained on the docks expenses were being incurred against the cargo for storage and demurrage. (Testimony of Joann Daughdrill)
"11. In late September, 1987 Knud Erichsen Company, after conferring with the various manufacturers, requested Hapag-Lloyd, A.G. through its agents in Mobile to arrange for the cartons to be stripped from the container and placed in storage in a reputable warehouse in Mobile until such time as Scandinavian Import Systems could make payment for the goods and outstanding charges or until a new buyer or buyers could be found for the goods. Pursuant to the instructions of Knud Erichsen Company and Hapag-Lloyd, A.G., Biehl Company contacted several warehouses in Mobile and eventually made arrangements with Harwell Carey, Inc., a local warehouse, to receive and store the goods. Biehl's arrangement with Harwell Carey for the storage of the goods included that the goods were being stored for Hapag-Lloyd, A.G., that the storage charges could be paid when the goods were picked up and that the goods would not be released by Harwell Carey without the written authorization of Biehl Company. (Testimony of Joann Daughdrill and Erik Sorensen, page 11)
"12. It was Biehl Company's understanding that the goods were delivered to Harwell Carey from the Alabama State Docks on October 12, 1987. (Testimony of Joann Daughdrill) In addition to the invoice cost of the goods, when the shipment left the Alabama State Docks the following charges were outstanding against the goods:
 "1. Sea Freight $2,563.20 "2. U.S. Terminal Charges $ 198.80 "3. Wharfage $ 15.07 "4. Alabama State Docks Storage Charges $ 226.00 "5. Demurrage Charges for Container (After Reduction by 50 Percent) $6,591.00 "6. Knud Erichsen Charges for Receiving Storage and Preparation of the Cargo for Shipment $2,148.20 "7. Bank Charges $ 139.00 "8. Drayage of Container $ 45.00 "9. Knud Erichsen Charges for Expenses for Telexes, Phone Calls, etc. Regarding this Shipment $1,260.00 *Page 880 
"The outstanding charges against the shipment when the same was removed from the Alabama State Docks was $13,186.27. (Testimony of Erik Sorensen, pages 13-17)
"13. On November 4, 1987 Biehl Company discovered for the first time that the container had not been delivered to Harwell Carey for stripping and storage but instead had been delivered to S/M Industries apparently pursuant to an agreement between Harwell Carey and S/M Industries. Biehl Company first received notice of S/M Industries' involvement when it received an invoice from S/M Industries dated November 2, 1987. (See plaintiff's exhibit 6) The invoice was received by Biehl Company on November 4, 1987. Upon receipt of the invoice Biehl Company in the person of Joann Daughdrill contacted David Boyes of S/M Industries. Mrs. Daughdrill had contacted S/M Industries to first confirm that they in fact were in possession of the shipment and to make sure that the goods had been received by S/M Industries under the original agreement between Biehl Company and Harwell Carey. During the course of the telephone conversation between Joann Daughdrill and David Boyes, David Boyes on behalf of S/M Industries agreed that the storage charges for the goods could be paid when the goods were picked up as opposed to payment in advance or on a monthly basis. S/M Industries also agreed that the goods would not be released without Biehl Company's written authorization. In confirmation of the agreement reached on November 4, 1987, S/M Industries acknowledged in writing that the goods would not be released without Biehl Company's written authorization. (See plaintiff's exhibit 1) Plaintiff's exhibit 1 was executed by Jim Moore, a 50 percent owner of S/M Industries. The parties do not dispute that the signature on plaintiff's exhibit 1 is that of Jim Moore. (Testimony of Joann Daughdrill)
"14. The evidence is undisputed that had the warehouse requested that the storage charges for the goods be paid in advance or on a monthly basis instead of allowing payment when the goods were picked up, Knud Erichsen Company and/or Hapag-Lloyd, A.G. would have paid the storage charges in accordance with such request. (Testimony of Elmar Hafkemeyer, pages 17, 18 and Erik Sorensen, page 19) There is also undisputed evidence that had the warehouse not agreed that the goods would be held until written authorization for their release was received from Biehl Company, Hapag-Lloyd, A.G. would have caused the goods to be removed to another warehouse. (Testimony of Elmar Hafkemeyer, pages 18, 19)
"15. Subsequent to the storage of the goods in the warehouse, Scandinavian Import Systems was able to make financial arrangements to secure the release of two consignments of the goods. The charges due on the two consignments were paid to Knud Erichsen Company in Denmark. After Knud Erichsen 
Company's receipt of the outstanding amounts due on the two consignments, Knud Erichsen Company issued delivery orders to Scandinavian Import Systems. Upon receipt of the delivery orders, Scandinavian Import Systems then presented the same to S/M Industries requesting release of the goods covered by the delivery order or orders in question. Once Scandinavian Import Systems presented the delivery order or orders to S/M Industries a representative of S/M Industries contacted Biehl Company to advise that delivery orders had been presented and requested authorization to release the goods covered by the delivery orders. Upon receiving advice from S/M Industries that certain delivery orders were in hand, Biehl Company issued written authorization to S/M Industries for the goods covered by the delivery orders. At the same time, Biehl Company advised S/M Industries that the outstanding storage charges for the goods covered by the delivery orders should be collected by the warehouse and that the delivery orders should be retained with a copy being forwarded to Biehl Company. This procedure was followed for the release of two consignments of goods on December 11 and December 16, 1987. (See plaintiff's exhibits 7 and 8) With regard to the release *Page 881 
of goods on December 11 and 16, Biehl Company was also advised by Knud Erichsen Company that delivery orders had been issued covering certain consignments. Despite its request to S/M Industries, Biehl Company never received a copy of the delivery orders presented. (Testimony of Joan Daughdrill and Erik Sorensen, pages 20-23; also see plaintiff's exhibit 15)
"16. At the time of the release of the two consignments of cargo in December, 1987 Scandinavian Import Systems paid to S/M Industries the outstanding storage charges then due on the goods released. (Testimony of David Boyes)
"17. After payment of all outstanding charges to Knud Erichsen Company, a further delivery order was issued on January 18, 1988 covering six cartons of furniture. Biehl 
Company was not informed that the delivery order had been issued either by S/M Industries or Knud Erichsen Company. No claim is made with regard to the six cartons covered by the delivery order of January 18, 1988.
"Excluding the six cartons covered by the delivery order issued on January 18, 1988, there remained in S/M Industries subsequent to the deliveries of the two consignments in December, 1987 a total of 582 cartons of furniture. (Testimony of Erik Sorensen, page 23)
"18. On February 18, 1988 S/M Industries released to Scandinavian Import Systems the remaining 582 cartons of furniture upon Scandinavian Import Systems' payment of the outstanding storage charges of S/M Industries. The release of the 582 cartons was without the knowledge of Biehl Company, Hapag-Lloyd, A.G., Knud Erichsen Company, or the manufacturers of the goods. The release of the goods by S/M Industries was without authorization from Biehl Company and not pursuant to any delivery order issued by Knud Erichsen 
Company. (Testimony of Joan Daughdrill and David Boyes)
"19. The invoice cost of the 582 cartons released by S/M Industries on February 18, 1988 was $28,886. 19. (Testimony of Erik Sorensen, pages 24, 25; see also plaintiff's exhibit 2A-2I and the conversion table converting foreign currencies to U.S. dollars for each delivery order) The outstanding charges due Hapag-Lloyd, A.G., Knud Erichsen Company, and the various suppliers on the 582 cartons released by S/M Industries was $7,121.85. (Testimony of Erik Sorensen, pages 24, 25; see also table of pro rata charges due against 582 cartons)
"20. Biehl Company, Hapag-Lloyd, A.G., Knud Erichsen 
Company, and the various suppliers were unaware of the release of the 582 cartons until June, 1988 when Biehl Company at the request of Hapag-Lloyd, A.G. contacted S/M Industries to confirm that the cargo remained in their warehouse. Biehl 
Company was advised at that time that the goods had been released to Scandinavian Import Systems in February, 1988. Biehl Company immediately placed S/M Industries on notice that S/M Industries was to be held responsible for the unauthorized delivery of the 582 cartons of furniture.
"21. In May, 1988 Scandinavian Import Systems declared bankruptcy. There were no funds available for the payment for the 582 cartons and the outstanding charges relating thereto.
"22. Hapag-Lloyd, A.G. is obligated to Knud Erichsen 
Company and the suppliers for the invoice cost plus the outstanding charges against the goods. Neither Knud Erichsen 
Company nor suppliers have been paid for the goods here concerned or the outstanding charges. (Testimony of Erik Sorensen, pages 27, 28, 76, 77 and Elmar Hafkemeyer, pages 23, 24)
 "CONCLUSIONS OF LAW
"1. Plaintiff brings the present action under theories of breach of bailment contract, conversion, and breach of duty by a public warehouse. The Court shall discuss each of plaintiff's theories in the above order.
"2. A bailment is defined as the delivery of personal property by one person to another for a specific purpose, with a contract, express or implied, that the trust *Page 882 
shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. Farmer v. Machine Craft, Inc.,406 So.2d 981 (Ala.Civ.App. 1981) In order for a bailment to exist the bailee must have voluntarily assumed the custody and possession of the property for another.
"There is no doubt that S/M Industries voluntarily assumed the control of the 737 cartons held under a bill of lading by Knud Erichsen Company and in the possession of Hapag-Lloyd, A.G. as carrier for Knud Erichsen Company. The Court finds that a contract of bailment was entered into between Biehl 
Company, as agent for Hapag-Lloyd, A.G. and S/M Industries on or about November 4, 1987. The Court further finds that under the terms of the bailment contract, S/M Industries understood that their storage of the goods was on behalf of Hapag-Lloyd, A.G., S/M Industries agreed that the storage charges could be paid when the goods or any portion of them were picked up, and S/M Industries further agreed that the goods would not be released without the written authority of Biehl Company. The bailment contract between Biehl Company and S/M Industries was not gratuitous as S/M Industries was to receive a fee for the storage of the goods. The existence of the bailment contract and the intent of the parties is evidenced by the written acknowledgement by S/M Industries that the goods would not be released without the written authority of Biehl 
Company. (See plaintiff's exhibit 1)
"3. Defendant admits that the 582 cartons in question were delivered to Scandinavian Import Systems without authorization from Biehl Company. On this basis the Court finds S/M Industries in breach of its bailment contract with Biehl 
Company and, absent some legal defense, . . . liable in damages to plaintiff Hapag-Lloyd, A.G.
"4. Defendant raises as a defense a lack of consideration for its promises to Hapag-Lloyd, A.G. Defendant claims that since its storage charges were not in fact paid by Hapag-Lloyd, A.G. it had no obligation to honor its agreement with Biehl 
Company acting as agents for Hapag-Lloyd, A.G. In the first instance defendant's position in this regard begs the question. The Court has previously found that defendant agreed that its storage charges could be paid when the goods or any portion of them were picked up. This alone is sufficient consideration to support its promises to Biehl Company. Even if this were not the case, the validity of a contract is not affected because the consideration may not have moved from the party to whom the obligations of the contract are extended and in whom the right of enforcement resides. Willingham v. Lankford, 257 Ala. 595,60 So.2d 387 (1952). There is ample evidence that had the agreement between Biehl Company and S/M Industries required payment of S/M Industries' storage charges in advance or on a monthly basis the same would have been paid either by Knud Erichsen Company or Hapag-Lloyd, A.G.
"5. There is even further consideration to support S/M Industries' promise not to release the cargo without Biehl 
Company's written authorization. The uncontradicted testimony of Elmar Hafkemeyer establishes that had S/M Industries not agreed to hold the cargo until written authorization for its release was received from Biehl Company, Hapag-Lloyd, A.G. would have required the cargo to be moved to another warehouse. That which creates and carries benefit to the party promising, or causing trouble, injury, inconvenience, prejudice, or detriment to the other party, is sufficient consideration to support the promise under consideration. Files v. Schaible,445 So.2d 257 (Ala. 1984). In relying on S/M Industries' written promise that the cargo would not be released without Biehl 
Company's written authority, Hapag-Lloyd, A.G. suffered a legal detriment as it certainly had the right to, and by the uncontradicted testimony would have, removed the goods from S/M Industries' warehouse absent such a promise. Files v. Schaible, supra, and First Alabama Bankshares, *Page 883 Inc. v. McGahey, 355 So.2d 681 (Ala. 1977).
"The Court finds that defendant's contention that there was no consideration for its promises to Hapag-Lloyd, A.G. is without merit. Having found that S/M Industries breached its contract of bailment, [the court concludes that] plaintiff is entitled to recover damages under count one of its Complaint.
"6. Hapag-Lloyd's second cause of action is for conversion. The gist of an action for conversion is that the defendant wrongfully exercised dominion over the plaintiff's personal property in exclusion or defiance of his rights, where he has a general or special title to the property, or he has the immediate right to possession of the same. Ott v. Fox,362 So.2d 836 (Ala. 1978) There is no issue raised regarding Hapag-Lloyd's immediate right to possession of the goods here concerned at the time of S/M Industries' delivery of the same to Scandinavian Import Systems. Knud Erichsen Company held title to the goods and immediate right of possession by virtue of the negotiable bill of lading issued on delivery of the goods for ocean carriage. Hapag-Lloyd's right to immediate possession was pursuant to the authority of Knud Erichsen 
Company, as ocean carrier of the goods, and as a bailor of the goods vis-á-vis S/M Industries.
"A conversion may occur where there is a wrongful delivery to a third party of personal property by a bailee resulting in its loss to the owner of the property. A delivery to an unauthorized person is as much a conversion as would be the sale of property, or an appropriation of it to the bailee's own use. In such a case neither a sincere or apparently well-founded belief that the delivery to an unauthorized person was right nor the exercise of any degree of care constitutes a defense even to a gratuitous bailee. Treadwell Ford, Inc. v.Wallace, 49 Ala. App. 308, 271 So.2d 505 (1973).
"Defendant in the present case admits that its delivery of the 582 cartons to Scandinavian Import Systems was in knowing violation of its agreement with its bailor, Biehl Company. If an action for conversion will lie against a bailee who mistakenly delivers goods to an unauthorized person, such an action will surely lie against a bailee who knowingly does so. The Court finds that S/M Industries' delivery of the 582 cartons to Scandinavian Import Systems on February 18, 1988 was a conversion of the goods against the rights of Knud Erichsen Company, the various suppliers, and Hapag-Lloyd, A.G. entitling Hapag-Lloyd, A.G. to recover damages for the same.
"7. Plaintiff's third and final cause of action seeks recovery for defendant's breach of its duties as a public warehouseman. To some extent plaintiff's right of recovery is subsumed by its recovery under count one. A public warehouseman owes a duty of ordinary care for the protection of goods delivered into its possession. If there be injury or loss of goods during the bailment, the burden devolves on the bailee or warehouseman to acquit himself of want of diligence in respect thereto. Churchill v. Walling, 205 Ala. 509, 88 So. 582 (1921),Hatchett Brother v. Gibson, 13 Ala. 587 (1848). A warehouseman is liable for the delivery of goods to the wrong person. Kitchens v. Mann, 16 Ala. App. 599, 80 So. 173 (1918). Defendant's delivery of the 582 cartons to Scandinavian Import Systems in knowing violation of its agreement to store the goods is a breach of the obligation owed by a warehouseman. Plaintiff is likewise entitled to recover under count three of its Complaint.
"8. Having determined that plaintiff is entitled to recover on each of the three counts of its Complaint, the Court must now assess damages against the defendant. For the loss of property through the wrongful acts of another, a plaintiff is entitled to recover the market value of the property at the time the wrongful act was committed. Gamble, Alabama Law ofDamages, § 36-49, 50 (1982) Plaintiff offered in evidence at trial the original invoices covering the 582 cartons here concerned. The amounts shown on the invoices are in foreign currency (Danish kroner, Swedish *Page 884 
kronor, and Norwegian kroner). After converting the invoice amounts based on the stipulated exchange rate, the invoice cost of the goods here concerned the U.S. dollar equivalent is $28,886. 19. In determining the market value of the goods here concerned, the Court is of the opinion that there should be added to the invoice cost the seafreight and other related charges incurred against the goods totalling $7,121.85. The addition of the latter figure will reflect the true cost or value to any potential purchaser of these goods in the United States. The Court therefore assesses total compensatory damages against defendant in the amount of $36,008.04. Plaintiff is also entitled to interest at the rate of 6 percent per annum from February 18, 1988, the date of S/M Industries' delivery of the goods here concerned to Scandinavian Import Systems.Gamble, Alabama Law of Damages, § 36, 50 (1982).
"9. Based on the foregoing the Court hereby enters judgment against defendant and in favor of plaintiff for compensatory damages in the amount of $36,008.04 plus interest at the rate of 6 percent from February 18, 1988.
"DONE this the 25th day of May, 1990.
"s/Robert L. Byrd, Jr.
"Circuit Judge"
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ., concur.