173 So. 12

## MADDOX v. FULLER et al.
### 4 Div. 899.

Supreme Court of Alabama.

Jan. 21, 1937.

Rehearing Denied March 18, 1937.

Rowe & Rowe, of Elba, for appellant.

Sollie & Sollie, of Ozark, and J. C. Fleming, of Enterprise, for appellees.

BOULDIN, Justice.

Bill to enjoin breach of covenants not to engage in certain lines of business in competition with the purchasers of such businesses with the good will incident thereto.

The appeal is .from a decree overruling demurrers to the amended bill.

Briefly stated, the case made by the amended bill is this:

On and prior to July 1, 1927, the respondent, J. W. Maddox, owned and operated ginning and warehouse plants in the town of New Brockton. In connection with the ginning business, he was engaged in the business of buying and selling cottonseed, the ginning and cottonseed business being so related that each supplemented and promoted the other; that he was also engaged in the commercial fertilizer business, a business in which the purchasers were also engaged.

On July 1, 1927, said respondent sold and conveyed to complainants S. D. Fuller and W. H. Ward the ginning and warehouse plants and real estate connected therewith, and in connection therewith sold the ginning business, the warehouse business, the cottonseed business, and the fertilizer business, with the good will of each, all for a total purchase price of $22,500, which was duly paid. Contemporaneous with the conveyance of the physical properties, respondent, J. W. Maddox, executed a separate instrument in writing containing the cove-

nants sought to be specifically enforced. This contract, made exhibit to the bill, appears in the report of the case.

Later W. H. Ward sold and conveyed his interests to complainant Enterprise Oil Company, a corporation, and thereafter, down to the filing of the bill in 1935, co-complainants S. D. Fuller and Enterprise Oil Company conducted these several businesses under the partnership name of Farmers Gin & Bonded Warehouse.

At the time of the filing of the bill respondent, J. W. Maddox, was engaged in erecting a ginnery and seed house in the same town within a quarter of a mile of complainants' plant, and was preparing and proposing to engage in the ginning business, the cottonseed business, and warehouse business in competition with those of complainants, in breach of said covenants, to the damage of complainants in an unascertainable sum, but in excess of $5,000, the amount of liquidated damages stipulated in the contract.

Further allegations will appear as we proceed.

The bill prays that respondent be restrained by injunction from erecting the proposed ginning plant, warehouse, and seedhouse and engaging in the ginning, warehouse, cottonseed, or fertilizer businesses in competition with complainants.

■ Injunction is the recognized remedy in such cases.

■ The specific performance of covenants not to engage in such business is effectuated by injunction. The stipulation for payment of a stated sum by way of liquidated damages for a breach does not defeat the right to such relief. As applied to a sale of properties valuable chiefly because adapted to a specific business, or the sale of a going business with the good will thereof, the extent of injury from a breach not being ascertainable, specific performance through injunction is deemed the more adequate remedy.

If the contract, by fair intendment, stipulates for alternate methods of performance, one by staying out of business, the other by payment of a specified sum upon going into business, leaving it optional with the covenantor, the case is different.

The contract exhibited here imports an unconditional obligation, stamps the acts here complained of a "breach," and the sum stipulated to be paid as "liquidated damages." It is not of the class upon which injunctive relief is denied because of alternate provisions for payment of money. Eaton v. Sadler, 215 Ala. 161, 110 So. 10; Harris v. Theus et al., 149 Ala. 133, 43 So. 131, 10 L.R.A.(N.S.) 204, 123 Am.St.Rep. 17.

This rule is now written into a statute. Code, § 6832.

■ Covenants by a vendor of a plant suited to and mainly valuable for a going business, theretofore conducted by him, not to engage in a rival business within such boundaries and for such stipulated time as will materially depreciate the value of the property sold, are, in the absence of special circumstances causing injury to the public, valid and enforceable contracts. Harris v. Theus et al., supra; Flowers & Peagler v. W. T. Smith Lumber Co., 157 Ala. 505, 510, 47 So. 1022; McCurry v. Gibson, 108 Ala. 451, 18 So. 806, 54 Am.St.Rep. 177; J. L. Davis, Inc., v. Christopher, 219 Ala. 346, 122 So. 406; Crossfield v. Lokey, 212 Ala. 560, 103 So. 649; Saxon v. Parson, 206 Ala. 491, 90 So. 904; American Laundry Co. v. E. & W. D.-C. Co., 199 Ala. 154, 74 So. 58; Code, § 6827.

■ It is not necessary that the contract specifically mention a sale of the business, nor the good will thereof. The taking over of the same business by the vendee, and the covenants designed, in the nature of them, to protect the good will, which in much consists in the disposition of customers to continue to do business of the same kind at the same place, imply a sale of the good will, and all the circumstances may be averred and proven to show such intent. Smith v. Webb, 176 Ala. 596, 58 So. 913, 40 L.R.A. (N.S.) 1191; J. L. Davis, Inc., v. Christopher, supra; Moore & Handley Hardware Co. v. Towers Hardware Co., 87 Ala. 206, 6 So. 41, 13 Am.St.Rep. 23.

The chief insistence of appellant is that specific performance will not be decreed in this case because the cotton ginning business in the cotton belt is a quasi public business; that all contracts imposing any restraint, whatever, on such business are opposed to the public interest, against public policy, and void.

In Tallassee Oil & Fertilizer Co. et al. v. H. S. & J. L. Holloway, 200 Ala. 492, 493, 76 So. 434, 435, L.R.A.1918A, 280, it was said: "We live in a great agricultural state, and cotton has long been recognized as our chief staple, considered as the foundation of the wealth and prosperity of the

agricultural sections of the state. Its preparation for market is therefore of the utmost concern to the public at large. Any one has of course the right to erect a gin for his own private purposes, but when he undertakes the ginning of cotton for the public his gin is dedicated to the public use, and under the authorities above cited, it becomes clothed with a public interest affecting the community at large and subject to governmental regulation."

Again in Dothan Oil Mill Co. et al. v. Espy et al., 220 Ala. 605, 127 So. 178, 184, "It is a matter of judicial knowledge that the business of ginning cotton is a business affected with a public interest, and is an essential element of the great cotton industry in this state."

It may be added that by statute the Commissioner of Agriculture is "empowered to supervise and control public gins as to character of service which they render.", Agricultural Code 1927, § 346, p. 147.

A permit is required to operate a public gin. "In the issuance of the permit the Commissioner shall consider the responsibility, the reliability and qualifications, as well as the capacity of the person or persons or corporation to do such ginning business, so far as to afford all reasonable facilities, conveniences and services to the public, and shall have the power and authority to require such facilities, conveniences and services to be afforded the public before a permit is granted." Agricultural Code 1927, § 347, p. 147, amended Acts 1935, p. 234.

A public ginnery is not, in the full sense, a public utility, with the powers of eminent domain, erected only on public authorization, devoted to a public service not to be abandoned save by consent of governing authority, and operating under law-made service rates. It has not been so considered, and the Legislature has not undertaken to so declare.

The plant is private property, erected at will on the owner's land; may be bought and sold as private property; operates on a schedule of charges fixed by the ginner; and may be abandoned as any other private business. The ginner may build up a good will of the business and pass it by sale and covenants along with the property and business to which it is incident. The purchaser may get the full benefit of such good will upon obtaining a permit to operate, which is issued on the showing of reliability and ability to render the service defined in the statute. This permit is required as a method of effectual supervision over the operations of a public gin.

In Alabama the ginning business is of that large class of private enterprises so essential to the general welfare as to be subject to public regulation and supervision; and, likewise, amenable to the general principles of equity jealously safeguarding the public interests against hurtful combinations and practices. Such is the substance and effect of our decisions above quoted. Does this, per se, render covenants such as here presented wholly void because against public policy?

Appellant relies upon the rule thus stated in 6 R.C.L. pp. 803, 804: "In reference to contracts in restraint of trade it is to be noted that a distinction is generally drawn, and with much force, between those trades or vocations, on the one hand, in which the general public, as such, has some special interest, as for instance those of common carriers, water and light companies, and others of a quasi-public character, and those trades and vocations, on the other hand, in which the interest does not arise out of a common necessity, or is not otherwise a matter of common concern to the general public, but which serve rather to minister to the convenience or gratify the desires, tastes, etc., of such individual members of the community as care to extend their patronage. The ordinary rule that contracts in partial or reasonable restraint of trade are not invalid, does not apply to corporations engaged in a public business. In fact it may be said that if there is any sort of business which from its peculiar character can be restrained to no extent whatever without prejudice to the public interest, the courts would be compelled to hold void any contract imposing any restraint, however partial, on this peculiar business, provided, of course, it is shown clearly that the peculiar business thus attempted to be restrained is of such a character that any restraint upon it, however partial, must be regarded by the court as prejudicial to the public interest."

To like effect see 13 C.J. p. 478, § 422.

In our own case of American Laundry Co. v. E. & W. D. C. Co., 199 Ala. 154, 159, 160, 74 So. 58, 60, in course of a general discussion, it was said:

"If, however, the contract for restraint is in respect to a duty which the party owes

the public, although it is limited as to time and space, equity will not enforce it, and it will be held void. Tuscaloosa Ice Mfg. Co. v. Williams, 127 Ala. 110, 28 So. 669, 50 L.R.A. 175, 85 Am.St.Rep. 125; New Orleans Gaslight Co. v. Louisiana Light Co., 115 U.S. 650, 6 S.Ct. 252, 29 L.Ed. 516; Commercial Union Tel. Co. v. New England Tel. & Tel. Co., 61 Vt. 241, 17 A. 1071, 5 L.R.A. 161, 15 Am.St.Rep. 893.

"The true test was said by the great Tindal, C. J., to be: 'Is the restraint such only as to effect a fair protection to the interest of the party in favor of whom it is given, and not so large as to interfere with the interest of the public.' 7 Bing. 735."

Many cases have dealt with public utilities proper, wherein a duty to continue the public service obtains, not to be discontinued, nor transferred to another, without the consent of public authorities. As to these it may be noted that in Alabama, as elsewhere in recent times, law-made rates for public service are usually substituted for competition in assuring reasonable prices for services rendered. In many such cases a monopoly is encouraged and legalized as the best method of obtaining an efficient and economical public service of particular kinds.

Dealing with the ginning business with incidents above outlined, it is to be observed that public policy favors the protection of property rights, including the right of contract touching same. Good will of a going business is ofttimes a valuable property interest, but of value to a purchaser only as it may pass with the business, and the property employed therein. If covenants to protect the good will be stricken down, the value thereof, as a property interest, would be wholly or largely destroyed.

Thus, in our well-considered case of Harris v. Theus et al., 149 Ala. 133, 135, 136, 43 So. 131, 10 L.R.A.(N.S.) 204, 123 Am.St.Rep. 17, it is declared to be to the public interest that such good will should sell at a fair price, and to that end covenants of the seller not to engage in a like business in the same locality are enforceable, notwithstanding partial restraint of trade, unless, from the nature of such covenants, or the particular circumstances of the transaction, their enforcement be otherwise injurious to the public. This principle was recognized in Tuscaloosa Ice Manufacturing Co. v. Williams, 127 Ala. 110, 28 So. 669, 50 L.R.A. 175, 85 Am.St.Rep. 125, a strong case condemning a contract whereby, for a moneyed consideration, one of two ice plants was closed down to give a monopoly to the other in the manufacture and sale of ice.

The true test, as recognized in our cases, as well as the authorities relied upon by appellant, is whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public.

In the instant case the purchaser was not at the time engaged in a competitive ginning business. The public was deprived of no existing ginning facilities. By this transaction, the opportunity to impose excessive charges for service was not enhanced. These facts are regarded as proper elements for consideration in such cases, although the purchase of a rival business with its good will is not always condemned as against public policy. Restatement Law of Contracts, § 516, p. 996.

The bill further avers that the existing ginning facilities are fully adequate for that community; that substantial outlays have been made by complainants for betterment since the purchase; that the volume of business is so limited that more than one ginning, cottonseed, and warehouse business cannot be profitably conducted. These averments, taken as true on demurrer, disclose a situation wherein additional capital outlay and overhead operating expenses may lead to abuses hurtful to the public interest, and ultimately to a crippling of efficient services at reasonable cost.

Without prolonging the discussion, we conclude the amended bill does not disclose a transaction void as against public policy.

No relief is sought touching the covenant not to engage in a banking business. Suffice to say, this covenant is severable, and, whether valid or not, imposes no obstacle to the relief sought. City of Greenville v. Greenville Water Works Co., 125 Ala. 625, 27 So. 764; Denson v. Alabama Fuel & Iron Co., 198 Ala. 383, 73 So. 525; Restatement Law of Contracts, § 518, p. 1004.

The decree overruling the demurrer was without error.

Affirmed.

ANDERSON, C. J., and GARDNER, and FOSTER, JJ., concur.