Jack C. SCOTT, Plaintiff–Appellant,

v.

BOARD OF TRUSTEES OF the MOBILE STEAMSHIP ASSOCIATION–INTERNATIONAL LONGSHOREMEN'S ASSOCIATION PENSION, WELFARE AND VACATIONS PLANS, Defendants–Appellees,

Aetna Life Insurance Company, Defendants.

No. 86–7398.

United States Court of Appeals, Eleventh Circuit.

Nov. 8, 1988.

Donald A. Friedlander, Ann E. Taylor, Legal Services Corp. of Alabama, Mobile, Ala., for plaintiff-appellant.

Robert J. Mullican, Armbrecht, Jackson, Demouy, Crowe, Holmes & Reeves, Edward A. Dean, William B. Harvey, Mobile, Ala., for Bd. of Trustees.

Merceria Ludgood, Figures, Ludgood & Figures, Michael A. Figures, Mobile, Ala., for Mobile S.S. Assoc. and Int'l. Longshoremen Assoc.

Before HATCHETT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal from the dismissal by the trial court, 815 F.2d 653, of an action for declaratory judgment brought by Scott against the appellees in the Alabama circuit court, later removed on diversity grounds to the United States district court.

Briefly stated, the issue before this Court arose from the provisions of an indemnity policy obtained by the Board of Trustees from Aetna Insurance Company. The coverage of the policy extends to the qualified dependents of the participants. Prior to a 1980 amendment, common law spouses were covered under the policy. In an amendment adopted that year, however, the welfare plan's coverage now includes only the spouses of those participants who have entered into ceremonially solemnized marriages. In other words, common-law spouses are now excluded from the welfare plan's coverage.

In his suit for declaratory judgment, Scott contended that such a provision in the contract between the Board of Trustees and Aetna was void as being contrary to the public policy of the State of Alabama. Noting that the Alabama cases of *Piel v. Brown*, 361 So.2d 90 (Ala.1978) and *Beggs v. State*, 55 Ala. 108 (1876), recognized the parity of common-law and ceremonially solemnized matrimony, this Court certified to the Alabama Supreme Court, pursuant to Rule 18 A.R.App.P., the following certified question for its consideration:

Are contractual provisions that distinguish between common-law and ceremonially solemnized marriages, which deny common-law marriages the same status as ceremonially solemnized ones, void as violative of the public policy of the State of Alabama?

The answer to the certified question by the Alabama Supreme Court follows:

The facts leading to our consideration of this matter are these:

The plaintiffs, Jack and Louise Scott, are purported to be common-law spouses. They have cohabited for 31 years and have one child. Prior to a job-related injury in 1974 that left him disabled, Jack Scott worked as a longshoreman at the Port of Mobile. He participates in the International Longshoremen's Association's Welfare Plan ("Welfare Plan"). The Welfare Plan provides group health insurance through Aetna Life Insurance Company ("Aetna"). The coverage of the policy extends to the qualified dependents of the participants. Prior to a 1980 amendment, common-law spouses were covered under the policy. The amendment, however, narrowed Welfare Plan's coverage to include only the spouses of those participants who had entered into ceremonially solemnized marriages. In other words, common-law spouses are now excluded from the Welfare Plan's coverage.

In 1983, Louise Scott was hospitalized. Her resulting medical expenses totalled $28,438.24. When she tried to procure spousal benefits from the Welfare Plan, it rejected her claim. The basis for the denial was that she was a common-law spouse and therefore failed to meet its marriage requirement. Thereafter, the plaintiff, Jack Scott, filed suit in circuit court for a declaratory judgment to compel the defendants, the board of trustees of the Welfare Plan ("the Board") and Aetna, to extend dependent spousal coverage to Louise Scott. Aetna succeeded on its motion to remove the proceedings to the United States district court. That court later granted Aetna's motion for summary judgment. At trial, the Scotts maintained that the Board had failed to

give them notice of the marriage requirement pursuant to the 1980 amendment. They further argued that the Board was estopped from challenging the validity of their common-law marriage. In their final argument, the Scotts asserted that the coverage terms of the policy that excluded common-law spouses are void as against public policy. The district court found that the Scotts had received sufficient notice of the 1980 amendment and that the amended terms did not violate public policy. The court further concluded that the estoppel issue did not merit its consideration. On appeal to the Eleventh Circuit, Scott reasserted his public policy arguments. Following a presentation of oral arguments, the Eleventh Circuit certified its question to this Court.

We note at the outset that the general rule concerning insurance plans is:

"[I]nsurance companies have the right, in the absence of statutory provisions to the contrary, to limit their liability and write policies with narrow coverage; the insured has the option to purchase the policy or look elsewhere. *Aetna Insurance Co. v. Pete Wilson Roofing & Heating Co., Inc.*, 289 Ala. 719, 272 So.2d 232 (1972); *Mooradian v. Canal Insurance Co.*, 272 Ala. 373, 130 So.2d 915 (1961).

... An insurer, therefore, may, with the insured's acceptance, insert as many exclusion clauses in its liability policy as it deems proper and necessary as long as they do not conflict with *public policy* or the statutory laws of the state. *Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 522 F.2d 1207 (8th Cir.1975); *Alabama Farm Bureau Mutual Casualty Insurance Co. v. Goodman*, 279 Ala. 538, 188 So.2d 268 (1966)." [Emphasis added.]

*Cotton States Ins. Co. v. Diamond Housing Mobile Homes*, 430 F.Supp. 503, 505–06 (N.D.Ala.1977).

In our prior considerations of issues involving public policy matters, we have exercised great caution. Our inquiry has been framed in terms of "whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public." *Maddox v. Fuller*, 233 Ala. 662, 667, 173 So. 12, 16 (1937).

The Board maintains that a valid distinction may be made between common-law spouses and spouses in a ceremonially solemnized marriage. In support of its argument, it points to the administrative convenience and argues that it would be both difficult and inherently expensive to require it to determine whether a common-law marriage exists. Such a determination is made by ascertaining whether a couple meets the four requisites of "(1) capacity; (2) present agreement or consent of the marriage; (3) public recognition of the existence of the marriage; and (4) cohabitation or mutual assumption openly of marital duties and obligations." *Aaberg v. Aaberg*, 512 So.2d 1375, 1376 (Ala.1987).

The Board's position has been duly considered, and we find it to be without merit.

It is well settled in this State that we recognize common-law marriages as well as ceremonially solemnized marriages. *Piel v. Brown*, 361 So.2d 90 (Ala.1978); *Kelly v. Kelly*, 247 Ala. 316, 24 So.2d 265 (1945); *Blackwood v. Kilpatrick*, 52 Ala. App. 505, 294 So.2d 753 (Ala.Civ.App. 1974); *Martin v. State*, 19 Ala.App. 251, 96 So. 734 (1923). In *Piel*, we explained that "such a marital device exists in this state, not as an exception, but as a co-equal, alternate method of validating the connubial union of two people." 361 So. 2d at 93.

In *Beggs v. State*, 55 Ala. 108, 112 (1876), this Court held that "[t]he parties [to a common-law marriage] stand to each other in the relation of husband and wife, having all the rights, and subject to all the duties, flowing from a marriage in strict conformity to the statute."

When presented with the question of whether a distinction may be drawn between common-law and ceremonially solemnized marriages, other courts have held similarly. For example, after not-

ing the administrative convenience of recognizing only ceremonially solemnized marriages, the Colorado Supreme Court rejected arguments for distinguishing between the two methods of entering into a marriage. "The fact that a marriage created in another manner is easier to prove than a marriage created in another manner cannot alone justify the distinction...." *Carter v. Firemen's Pension Fund*, 634 P.2d 410, 412 (Colo.1981). *Carter* is distinguished from the instant case in that state action was found and therefore, the marriage distinction was held to violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. However, the reasoning of *Carter* can be readily transposed to the present case. We accept that reasoning and therefore reject any arguments for allowing a distinction to be made between the two forms of entering into a marriage based on administrative convenience.

The Board's argument that the license requirement would enable the Welfare Plan to insure the financial stability of its program by obviating the need to determine whether a legitimate common-law marriage exists is equally without merit. If the Board were in doubt as to whether a common-law marriage existed, it would need only to file a complaint for a declaratory judgment. See Rule 57, Ala.R.Civ.P., and § 6–6–220, et seq., Ala. Code 1975.[1]

We conclude that contractual provisions denying common-law marriages the same status as ceremonially solemnized marriages are void as violative of the public policy of this State.

QUESTION ANSWERED.

Torbert, C.J., and Jones, Almon, Shores, Beatty, and Adams, JJ., concur.

Maddox, Houston, and Steagall, JJ., dissent.

We accept the answer by the Alabama court as establishing the law of the State in this diversity action.

The judgment is therefore REVERSED and the case is REMANDED to the district court for further proceedings not inconsistent with this opinion.

---

1. Where a third party stakeholder is compelled to make payment regardless of the outcome of conflicting third party claims, the appropriate remedy for the third party would be either an action for a declaratory judgment or an interpleader action, see Rule 22(a). Two of the most poignant examples of this are where an insurer owes the proceeds of a life insurance policy, to which there are conflicting claims, and where an administrator or executor of an estate is confronted with two or more conflicting claims of the assets of the estate.