MADDOX, Justice
(dissenting).
This suit concerns the validity of an alleged agreement Gerald Wallace claimed he had with Milton McGregor involving the ownership of certain stock in Macon County Greyhound Park, Inc.
The specific legal question presented on this appeal from a summary judgment is *1105 whether the trial court erred in concluding that, as a matter of law, the alleged agreement was void and unenforceable because it violated the public policy of this State as reflected in the legislative act that permitted the operation of the greyhound dog track in the first instance.
This action began on January 17, 1989, when Gerald Wallace filed a complaint against Thomas Marshall Marr, in which Wallace alleged that Marr was holding certain Macon County Greyhound Park stock as the nominee of Wallace, and that by failing to transfer the stock to Wallace and to pay him the dividends earned on the stock, Marr was guilty of conversion, breach of fiduciary duty, and fraud. Marr denied these allegations and contended that the stock belongs to him, Marr’s contention being that he paid $500 and guaranteed a $10,000,000 construction loan to build the track, in exchange for the stock.
On January 17, 1989, Marr filed a motion to dismiss, in which he asserted that the alleged agreement upon which Wallace sued never occurred, and that if it did, it was illegal and against the Constitution, laws, and public policy of the State of Alabama and was void as a matter of law. Marr also filed a motion for summary judgment on all counts of Wallace’s complaint, in which he asserted that the alleged agreement, if it existed, which he denied, was illegal, void, and unenforceable, since, he said, it was in violation of both the public policy of Alabama and Act No. 83-575, Ala. Acts 1983, which authorized the operation of the dog track.
Wallace filed a motion in opposition to Marr’s motion for summary judgment on April 9, 1989, in which he asserted, among other things, that the agreement between him and Marr that resulted in Marr’s holding stock as his nominee was a common business practice. He denied that there was a violation of Act No. 83-575, Ala. Acts 1983.
The trial judge held a hearing and issued a “Memorandum Opinion and Order,” which entered summary judgment for Marr as to all claims filed by Wallace; the judge held that the alleged agreements upon which Wallace premised his claims were illegal and void and violated the purposes of Act 83-575 and the public policy of Alabama. Wallace filed a motion to alter, amend, or vacate the judgment and the memorandum opinion and order and to reconsider the legally admissible evidence. The trial judge held a hearing on this motion and issued an order slightly amending his previous memorandum opinion, but did not vacate the summary judgment. Wallace appealed.
The trial court’s “Memorandum Opinion and Order” states:
“Gerald Wallace (Wallace) has sued Thomas Marr (Marr) for claims arising out of an alleged agreement between Wallace and Marr in which Marr would hold, as nominee for Wallace, stock in Macon Greyhound Park, Inc. (Park). Wallace alleges that Marr has refused to transfer him the stock and pay over dividends which have been declared from time to time by Park. Marr has filed a motion for summary judgment.
“McGregor and Marr vigorously deny Wallace’s allegations; however, for the purposes of this opinion only, the Court accepts as true the allegations of the amended complaint. The amended complaint and the undisputed facts gleaned from the materials submitted in support of and in opposition to Marr’s motion for summary judgment disclose that some time pri- or to September 1983, Milton E. McGregor (McGregor) contacted Wallace for the purpose of securing Wallace’s services in obtaining the right to operate a dog track in Alabama.[1] At or near September 1983, in *1106 consideration of Wallace’s services, McGre-gor agreed to provide Wallace with 5% of the outstanding ownership of Park.
“1983 Ala. Acts 575 became law, without approval of the Governor, on July 22, 1983, and permits parimutuel betting in Macon County, Alabama. The act also created the Macon County Racing Commission (Commission) and granted it broad regulatory powers over the granting and suspension of the track operator’s license as well as the power to regulate all other activities in connection with the operation of the track and corresponding pari-mutuel betting.
“After Act 575 became law, Wallace advised McGregor that he desired his 5% interest in Park (corporate stock) to be placed in the name of his nominee, Marr. McGre-gor complied with Wallace’s request, and the common stock was placed on the corporate books of Park in Marr’s name and the stock certificates were issued to Marr.
“Marr has refused to deliver the stock certificates to Wallace or pay over to Wallace any of the cash dividends which have from time to time been delivered by Park and paid to its stockholders, including Marr.
“Wallace contends that (1) neither his agreement with McGregor nor his agreement with Marr is illegal because they do not violate Act 575 and they are not contrary to public policy; and (2) genuine issues of material fact exist which prohibit the entry of summary judgment. Marr contends, among other things, that the agreements are illegal because they violate the disclosure requirements of Act 575 and they are contrary to public policy and therefore void. Because the Court concludes that the agreements, if they were made, violate Act 575 and contravene public policy, this case is decided on a question of law and there is no need to address the other issues raised on Marr’s motion for summary judgment.
“Pari-mutuel wagering is gambling. Opinion of the Justices, 287 Ala. 334, 335, 251 So.2d 751 (1971). ‘Gaming as a calling or business is in the same class as the selling of intoxicating liquors in respect to deleterious tendency.’ State v. Rosenthal, [93 Nev. 36] 559 P.2d 830, 833 (Nev.1977). ‘A [contract] may be declared to be illegal by a court for either of two reasons: (1) because it is prohibited by statute; or (2) because it is contrary to public policy.’ J. Murray, Jr., Murray on Contracts § 334 (2d rev’d ed. 1974). See, Matthews v. Matthews, 292 Ala. 1, 10, 288 So.2d 110 (Ala.1973) (equitable relief denied in a suit to establish a resulting trust where the complainant had misrepresented facts on a Veterans’ Administration loan application in order to secure a low interest loan to which he was not entitled). ‘[W]henever regulation and protection are the goal of a statute, contracts made in derogation of that statute are null, void, and unenforceable.’ See, Derico v. Duncan, 410 So.2d 27, 31 (Ala. 1982) (consumer loan made pursuant to the Mini-code was void because the lender was not licensed). ‘The true test to determine whether a contract is unenforceable because of public policy is “whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public.” ’ Colston v. Gulf States Paper Corp., 291 Ala. 423, 427, 282 So.2d 251 (1973) (quoting Maddox v. Fuller, 233 Ala. 662, 173 So. 12 (1937), and Lowery v. Zorn, 243 Ala. 285, 9 So.2d 872 (1942)). The public policy of a state is contained in its constitution and statutes, and in its common law as found in the opinions of its court of last resort. Couch v. Hutchinson, 2 Ala.App. 444, 57 So. 75 (1911). The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests. Taylor v. Martin, 466 So.2d 977 (Ala.Civ.App.1985). Dog racing, with attendant legalized gambling, is strongly affected by public interest and a highly appropriate subject for close regulatory supervision. See, In Re: Boardwalk Regen *1107 cy Casino License Application, 180 N.J.Super. 324, 434 A.2d 1111, 1120 (App.Div.1981) (review of administrative order by Casino Control Commission requiring divestiture by casino employees of any interest in a casino or its related activities). ‘The State has a substantial interest in assuring, to the extent possible, that gambling activities are conducted in a corrupt free environment.’ Fendrich v. Van DeKamp, 227 Cal.Rptr. 262, 270, 182 Cal.App.3d 246 (1986). . . .
“Act 575 required Park to file an application for the license to operate the race track, and further required certain detailed information regarding the Park, its incor-porators, stockholders, directors and officers. Section 6(3)(c)(ii) required Park to disclose the following information under oath:
“ ‘(ii) The name and address of each of the incorporators, stockholders, directors, and officers of any corporation making such application and the present business, occupation, or profession of each of such incorporators, stockholders, directors, and officers and each residence and business address and each business, occupation, and profession engaged in by such incorporators, stockholders, directors, and officers for a period of fifteen (15) years prior to the date of such application.’
“Section 16 provides that any corporation [or person] who violates any provision of the Act shall be guilty of a misdemeanor and punished by imprisonment from 5 days to 6 months or a fine of $100.00 to $1,000.00.
“The application for the license as well as Park’s articles of incorporation list Marr as a stockholder; however, they do not list Wallace as a stockholder.
“In determining whether a contract violates a statute, it is first necessary to determine the legislature’s intent in passing the statute. No Alabama Court has previously examined Act 575. However, other jurisdictions have commented on the purposes of laws regulating legalized gambling. See 2A Sands, Sutherland Statutory Construction § 56.02 p. 630 (4th ed.).
“The Act contains no legislative findings.[2] The Act is not primarily a revenue statute. It provides for the distribution of a portion of the income generated by the track, but its primary purpose is to legalize pari-mutuel betting in Macon County, Alabama and provide for its regulation. The title of the Act reveals that it creates the Commission for the ‘regulation, licensing and supervision of greyhound racing and wagering thereon.’ The legislature recognized its authority under the police powers of the state to control this activity by granting broad general regulatory power to the Commission.[3] Section 6 of the Act further delineates its regulatory features by requiring Park to disclose the names and other pertinent background information on its stockholders.[4] For what purpose? Because the purpose and policy of similar legislation is to protect the public interest, Fendrich, supra, the obvious purpose of the provision is to require investigation of the character and background of all persons in a position to influence or control the operation of a legalized gambling activity to the end of ensuring that corrupt persons and undesirables are not allowed to directly or indirectly enter this enterprise. Zaika v. Del E. Webb Corp., 508 F.Supp. 1005 (D.Nev.1981). Not only is the state entitled to develop a personal as well as a financial profile of the investors, Fendrich, supra; the state is entitled to inquire into the nature of [an] investor’s personal association with others to determine what reflection these associations may have on the character of the applicant. Hotel and Restaurant Employees and Bartenders International Union Local 54 v. Read, 832 F.2d 263 (3rd Cir.1987). ‘Gambling is traditionally suspect in our society, *1108 and an investment in such an enterprise, when permitted at all, is plainly open to the strictest kind of supervision.’ Medina v. Rudmund, 545 F.2d 244, 251 (1st Cir.1976). When dealing with gambling the ‘state may exercise greater control and use the police power in a more arbitrary manner’ Summersport Enterprises, Ltd. v. Pari-Mutuel Commission, 493 So.2d 1085, 1089 (Fla.Dist.Ct.App.1986). Public policy of the state requires that legalized gambling [be] free of corrupt influence so that public confidence and trust in the credibility and integrity of the regulatory process and gambling operations is maintained. In Re: Boardwalk Regency Corporation, 180 N.J.Super. 324, 431 [434] A.2d 1111, 1120 (App.Div.1981) (paraphrasing N.J.S.A. 5:12-1(b)(6)).
“In this case two acts which are permissible in ordinary commercial transactions have concurred in their execution to violate the purposes of the statute and the public policy of this state.[5]
“By having another hold stock as his nominee, Wallace not only prevented the Commission from investigating his character, background and his finances as well as his personal associations, it frustrated the public policy of this state because these transactions, if allowed to stand, do not inspire public confidence and trust in the credibility and integrity of the regulatory process. Although the Act only requires Park to disclose the information regarding the stockholders, its regulatory reach extends to the stockholders, and in this case to their principals. Otherwise, investors would be at liberty to act as strawmen for persons whose character, integrity, financial condition and past financial dealings, personal history and their personal associations and business associations would not withstand scrutiny.
“The conclusions expressed in this opinion are not a reflection on Wallace’s character or integrity. The Commission may have granted the license to Park had it known of Wallace’s participation as an investor in Park; however, the critical point is that the Commission was denied the opportunity to make an informed decision because the agreements prevented it from carrying out its statutory duties and responsibilities.
“The Court finds that the contract is illegal and void. Because the other claims filed by Wallace are not collateral to the illegal contract, they are due to be dismissed.
“Based on the foregoing reasons, it is ORDERED, that judgment is for Thomas Marr and against Gerald Wallace, and all claims filed by Gerald Wallace are dismissed.
“It is further ORDERED that the Clerk of the Court shall enter judgment in favor of Thomas Marr and against Gerald Wallace for the costs of this case.
“DONE and ORDERED in chambers this 9th day of May, 1989.
-“/s/William Gordon
- “Circuit Judge”
The issue before this Court is whether the trial judge erred in entering the summary judgment for Marr, and in order to decide that issue the Court has to determine whether the alleged agreement to hold stock as a nominee was in violation of the public policy of Alabama and the disclosure provisions in Act No. 575, Ala. Acts 1983. By affirming the judgment of the trial court, the majority necessarily determines that the trial court correctly held that the alleged agreement was void and unenforceable.[6]
I believe that the learned trial judge and the members of this Court who summarily affirm his judgment are incorrect in their interpretation of Act No. 83-575, Ala. Acts 1983, and the disclosure provisions contained therein.
*1109 Act No. 83-575 became a law under § 125 of the Constitution on July 22, 1983, without approval by the Governor. The title of the Act states its purpose:
“To provide for and create the Macon County Racing Commission for the regulating, licensing, and supervision of greyhound racing and wagering thereon; to prescribe the composition, appointment, powers and duties of the Racing Commission; to provide for and regulate the pari-mutuel or certificate method of wagering within the enclosure of licensed race tracks; to provide for the distribution of license fees, taxes, commissions and other monies received under the provision of the Act; to provide certain penalties for the violation of this Act and for other purposes relative thereto; to provide for a referendum of the voters of the county on the question of whether the Act will become effective in the county.”
The disclosure provisions of Act No. 83-575 are set out in Section 6:
“Section 6. It shall be the duty of the Racing Commission to carry out the provisions of this Act; and it shall have the following specific duties:
“(3) To require each applicant to:
“(a) If an individual, group of individuals or partnership, each individual -or partner shall be a resident of the State of Alabama for at least five (5) years immediately preceding the date of the license issued.
“(b) If a corporation, each incorpo-rator, stockholder, director, and officer shall be a resident of the State of Alabama for at least (5) [years] immediately preceding the date of the license issued.
“(c) Set forth on such application for a license the following information:
“(i) The full name of each individual or partner, their business and home address, their present business, occupation, or profession, and each residence and business address and each business, occupation, and profession engaged in by such individuals for a period of fifteen (15) years prior to the date of such application.
“(ii) The name and address of each of the incorporators, stockholders, directors, and officers of any corporation making such application and the present business, occupation, or profession of each of such incorpo-rators, stockholders, directors, and officers and each residence and business address and each business, occupation, and profession engaged in by such incorporators, stockholders, directors and officers for a period of fifteen (15) years prior to the date of such application....
“(4) Require an oath of every applicant or the president, executive officer, or managing officer or partner of each corporation or partnership stating that the information contained in the application is true.”
(Emphasis added).
Admittedly, Act 575 requires that each applicant for a license set forth on the application the name, residential address, business address, and business, occupation or profession, currently and for 15 years prior to the date of the application of each of the “incorporators, stockholders, directors, and officers,” § 6(3)(c)(ii) (emphasis added), and the Racing Commission is barred from licensing a corporation in which any of the incorporators, stockholders, directors, and officers has not been a resident of Alabama for five years prior to the application. § 6(3)(b).
I do not dispute the fact that the Act makes certain disclosure requirements. It does. The disagreement I have with the trial judge, and with the majority’s affirmance of his decision, is that they have broadened the definition of “stockholder” in the Act to anyone who has a beneficial interest in the stock even though “stockholder” is specifically defined in Ala. Code 1975, § 10-2A-2(13). Because this particular Act uses business corporation terms, and because Macon Greyhound Park, Inc., is, in fact, a business corporation, I think that when the legislature used the word “stockholder” in Act No. 83-575, it intended for that word to have the same meaning *1110 that that term has in Ala.Code 1975, § 10-2A-2(13):
“(13) SHAREHOLDER. One who is a holder of record of shares in a corporation. If the articles of incorporation or the bylaws so provide, the board of directors may adopt by resolution a procedure whereby a shareholder of the corporation may certify in writing to the corporation that all or a portion of the shares registered in the name of such shareholder are held for the account of a specified person or persons. The resolution shall set forth (i) the classification of shareholder who may certify, (ii) the purpose or purposes for which the certification may be made, (iii) the form of certification and information to be contained therein, (iv) if the certification is with respect to a record date or closing of the stock transfer books, the time within which the certification must be received by the corporation and (v) such other provisions with respect to the procedure as are deemed necessary or desirable. Upon receipt by the corporation of a certification complying with the procedure, the persons specified in the certification shall be deemed, for the purpose or purposes set forth in the certification, to be the holders of record of the number of shares specified in place of the shareholder making the certification.”
This Court stated the test as to whether a contract is unenforceable because of public policy, in Colston v. Gulf States Paper Corp., 291 Ala. 423, 282 So.2d 251 at 255 (1973):
“The true test to determine whether a contract is unenforceable because of public policy is ‘whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public.’ Maddox v. Fuller, 233 Ala. 662, 173 So. 12; Lowery v. Zorn, 243 Ala. 285, 9 So.2d 872.”
Wallace contends that he had a private contract to have a nominee (Marr) hold the stock for him, which is a commonplace business practice, and that the public interest is not injuriously affected in such a substantial manner that his private right should yield to the rights of the public. I think he has a good argument, at least to get past the summary judgment stage.
The legislature of Alabama has passed other acts authorizing pari-mutuel betting in various localities in the state, and I have reviewed the disclosure provisions of those Acts to resolve the issue here.[7] Each of those acts requires disclosure of the identity and residence of the stockholders, but the disclosure requirements of each of those Acts vary.
Act No. 2431, Acts of Alabama 1971, which relates to “all counties having populations of not less than 300,000 nor more than 600,000 according to the most recent decennial census,”[8] provided for essentially the same disclosure requirements as does Act No. 83-575 involved in this case:[9]
*1111 “Section 6. It shall be the duty of the County Racing Commission to carry out the provisions of this Act; and it shall have the following specific duties:
u * * * *
“(3) To require each applicant, who must have been a resident of the State of Alabama for at least five years immediately preceding the date the license is issued, to set forth on his application for a license to operate a race meeting the following information:
“(a) The full name of the person, association, or corporation, and if a corporation, the name of the State under which the same is incorporated, and the name of the corporation’s agents for service of process within the State of Alabama.
“(b) If an association or corporation, the names of the stockholders and directors of the corporation or the names of the officers and directors of the association.”
The statute that authorizes horse racing in Birmingham is much more specific in its disclosure requirements than is Act No. 83-575. It provides, in part:
“Any person desiring to construct or own a racetrack at which pari-mutuel wagering is permitted shall file with the appropriate commission an application for an owner’s license. Such application shall be filed at the time and place prescribed by such commission and shall be in such form and contain such information as may be prescribed by such commission, including the following:
“(1) The name and address of such person; if a corporation, the state of its incorporation and the full name and address of each officer and director thereof; if a foreign corporation, whether it is qualified to do business in the state; and if a partnership or joint venture, the name and address of each general partner thereof;
“(2) The name, and every address for the period of five years immediately preceding the date of such application, of each stockholder or member of such corporation, or each general partner of such partnership or joint venture, and of each person who has contracted for a pecuniary interest in the applicant or the facilities at which such race meeting or pari-mutuel wagering will be conducted, whether such interest be an ownership or a security interest, and the nature and value of such interest, and the name and address of each person who has agreed to lend money to the applicant; provided that if the applicant proposed to arrange further financing, subsequent to the award of an owner’s license, through a sale of stock, partnership interest or other equity interest, the issuance of debt securities, the entering into of financing leases or otherwise borrowing money, then in such ease, such commission may grant an owner’s license which sets forth conditions to be met in arranging such further financing or which reserves to such commission the right to approve any or all aspects or such further financing;
“(3) Such information as such commission deems appropriate regarding the character and responsibility Of the applicant and the members, partners, stockholders, officers and directors of the applicant....”
Ala.Code 1975, § 11-65-15.
I have examined each of the acts of the legislature relating to pari-mutuel wagering in this State, and it appears to me that the legislature has been quite specific in the various acts concerning disclosure requirements and restrictions that apply to pari-mutuel wagering and that the legislature has provided for different disclosure requirements and restrictions, for example, when dealing with the Macon dog track and the Birmingham horse track. Had Act No. 83-575, relating to the Macon dog track, been as specific in its disclosure requirements as is the act providing for horse racing in Birmingham, I would agree with the trial judge that Wallace’s alleged interest had to be disclosed, because § 11-65-15 specifically provides for disclosure of “[t]he name, and every address for the period of five years immediately preceding the date of such application, of each stockholder or *1112 member of such corporation ... and of each person who has contracted for a pecuniary interest in the applicant or the facilities at which such race meeting or pari-mutuel wagering will be conducted, whether such interest be an ownership or a security interest, and the nature and value of such interest.” [10] (emphasis added).
The difference between the requirements of the act regulating horse racing in Birmingham and the act regulating dog racing in Macon County as those acts relate to the disclosure of an ownership interest, is quite apparent. Had the legislature wanted to require disclosure by persons such as Wallace, who allegedly held his stock in the name of a nominee, a permissible business corporation practice, then the legislature obviously knew how to draft such a statute, because it did just that in the horse racing act.
Because I do not believe that any alleged agreement Wallace had regarding the stock was void and unenforceable, I think summary judgment was inappropriate. I should not be understood, however, as expressing any opinion on the merits of Wallace’s claim.

. "Wallace had assisted McGregor [Milton E. McGregor, an applicant for the license to run the Greyhound Park] in the past in McGregor’s attempts to secure the passage of legislation to permit pari-mutuel betting in Henry and Barbour [Counties], Alabama. In addition, he went to Macon County and assisted in the efforts of the pro-racing forces to secure a favorable vote in the referendum required by Section 21 of Act 575. The Court finds that the recitation of Wallace’s activities set out at pages two through six of Wallace’s brief on motion for summary judgment correctly details his deposition testimony regarding the nature of his services. Addition *1106 ally, Wallace’s services also consisted of him not telling the Governor to veto the dog track legislation.”

. "Compare Act 575 to 1984 Ala. Acts 131, § 1.

. "Section 1 provides that the Commission is vested with the powers necessary to enable it to execute fully and effectively the purposes of the Act. In § 6(5) the Commission is granted the power to promulgate uniform rules and regulations.”

."Section 17 of the Act lists certain persons who are prohibited from being licensed.”

. “It is not illegal for a person to be compensated in stock for services performed on behalf of a corporation. Ala.Code § 10-2A-36(a); and it is not an uncommon practice for persons to hold stock as a nominee."

. By dissenting, I do not make any determination whether there was, in fact, an agreement. The appeal is from a summary judgment, and only a question of law is presented on this appeal.

. Act No. 1167, Ala. Acts 1971—Local act authorizing pari-mutuel betting on greyhound racing in Jefferson County.
Act No. 2431, Ala. Acts 1971, as amended— General act authorizing pari-mutuel betting on greyhound racing in Mobile County.
Act. No. 749, Ala. Acts 1973 — Local act authorizing pari-mutuel betting on greyhound racing in St. Clair County.
Act. No. 376, Ala. Acts 1975 — Local act authorizing pari-mutuel betting on greyhound racing in Greene County.

. At the time of the approval of Act No. 2431, only Mobile County was covered by the population classification.

. The Legislature, in Act No. 1167, Acts of Alabama 1971, p. 2015, and Act No. 749, Acts of Alabama 1973, p. 1108, had provided for disclosure only of “[t]he names of the stockholders and directors of the corporation," but in Act No. 89-542, which provided for a Jackson County Racing Commission, the disclosure requirements were much more detailed, requiring the applicant to disclose “[t]he name and address of each of the incorporators, stockholders, directors and officers of any corporation making such application and the present address, occupation or profession of each [of] such incorpo-rators, stockholders, directors and officers and each residence and business address and each business, occupation and profession engaged in by such incorporators, stockholders, directors and officers for a period of fifteen (15) years prior to the date of such application.”

. While the Birmingham horse racing act would require the beneficial owner of stock to be disclosed, that act does not contain the same restriction that the Macon act (Act No. 83-575) contains that "[i]f [an applicant is] a corporation, each incorporator, stockholder, director, and officer shall be a resident of the State of Alabama for at least five (5) [years] immediately preceding the date of the license issued.”