The plaintiffs, Louise Bowman Vick and Melissa Vick Wilkins (hereinafter collectively referred to as "the Vicks"), sued J.C. Bradford Co., L.L.C.; PaineWebber Group, Inc.; PaineWebber, Inc.; UBS PaineWebber, Inc.; Everett F. Nix, Jr.; and Thomas Kloess (hereinafter collectively referred to as "the PaineWebber defendants"); and Thomas Roberts, claiming damages based on several state-law theories.[1] The PaineWebber defendants moved the trial court to stay proceedings pending arbitration. The trial court treated this motion as a motion to compel arbitration, and denied it. The PaineWebber defendants appeal. We reverse and remand.
In December 1990, Wyman Vick, husband of Louise Bowman Vick and grandfather of Melissa Vick Wilkins, died, leaving a will that appointed Louise Vick and Thomas Roberts as executors of his estate (hereinafter "the Estate"). The Estate includes two trusts established by the will; Louise Vick and Roberts were appointed cotrustees of both trusts.
In 1991, investment accounts were opened for the Estate and Louise, individually, with J.C. Bradford Co., L.L.C. (hereinafter "Bradford"). In 1992, the Estate, through Roberts, opened an options account (hereinafter referred to as "the Estate Account"). The document that created the account, called the "option new account form," was signed by three individuals: a Bradford registered-options principal, Nix, and Roberts. The option new account form contains an arbitration clause.
In 1995, Louise also opened an options account (hereinafter "the Vick Account"). The option new account form for the Vick Account was signed by both Louise and Nix. This form also contains an arbitration clause.
In 2001, the Vicks sued the PaineWebber defendants and Roberts, alleging various state-law claims arising from Roberts's alleged mishandling of the accounts (including the Estate Account and the Vick Account). The PaineWebber defendants moved the trial court to stay the proceedings pending arbitration, arguing that the arbitration clauses in the option new account forms for the Estate Account and the Vick Account (the forms are hereinafter referred to as "the contracts") covered the Vicks' claims. In response, the Vicks alleged that the contracts were void because, they say, the contracts as a whole violated the rules of the National Association *Page 273 
of Securities Dealers (hereinafter the "NASD"); thus, they argued, the arbitration provisions in the contracts were unenforceable. The trial court denied the motion to stay, stating that both contracts were void because they violated NASD rules. The PaineWebber defendants challenge this ruling on appeal.
The procedure for reviewing the denial of a motion to compel arbitration is well settled:
 "A direct appeal is the appropriate procedure by which to seek review of a trial court's order denying a motion to compel arbitration. Homes of Legend, Inc. v. McCollough, 776 So.2d 741, 745 (Ala. 2000). This Court reviews de novo the trial court's denial of the motion to compel arbitration. Patrick Home Ctr., Inc. v. Karr, 730 So.2d 1171, 1171 (Ala. 1999)."
Jim Burke Auto., Inc. v. McGrue, 826 So.2d 122, 128 (Ala. 2002) (footnote omitted); see also Rule 4(d), Ala.R.App.P.
Section 2 of the Federal Arbitration Act provides, in pertinent part:
 "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."
9 U.S.C. § 2. Thus, federal law requires the arbitration of claims encompassed by an arbitration clause that is part of a binding contract involving interstate commerce. Ex parte Payne, 741 So.2d 398, 402-03
(Ala. 1999). Accordingly, in order for the PaineWebber defendants to enforce the arbitration provisions in the option new account forms, those forms must constitute binding contracts. Id. at 403.
When a party is seeking to enforce an arbitration clause, the question whether a valid contract exists between the parties is to be decided by the trial court, not an arbitrator. Lee v. YES of Russellville, Inc.,784 So.2d 1022 (Ala. 2000); Ex parte Payne, supra; NationsBanc Invs.,Inc. v. Paramore, 736 So.2d 589 (Ala. 1999).[2] In making this determination, the trial court should apply Alabama contract law. BlueCross Blue Shield of Alabama v. Woodruff, 803 So.2d 519, 525 (Ala. 2001).
Because the PaineWebber defendants have made a prima facie showing that a valid contract that calls for arbitration exists (i.e., the PaineWebber defendants provided contracts that were signed by all parties and that contained an arbitration provision), the burden shifts to the Vicks to show that no such valid contract exists. Ex parte Caver, 742 So.2d 168,172 n. 4 (Ala. 1999). The Vicks attempt to satisfy this burden by arguing that the contracts violated NASD rules and are thus void. We disagree. *Page 274 
At issue in this case are two separate contracts: the option new account form for the Estate Account and the option new account form for the Vick Account. The only challenge the Vicks make to the formation of the Estate Account contract is that, under NASD rules, Roberts did not have the authority to sign the contract and to bind the Estate. Similarly, as to the Vick Account, the Vicks argue only that the contract is void because the contract was not signed by a registered options principal, as required by NASD rules. Because the Vicks' challenges to the contracts are based solely upon alleged violations of NASD rules, we assume that the contracts are otherwise valid under Alabama law. Therefore, the sole issue on appeal is whether a violation of an NASD rule will void an otherwise binding contract.[3]
The Vicks argue only that the alleged violations of NASD rules should void the contracts because the arbitration provisions in the contracts require that NASD rules be used in any arbitration proceeding.[4]
However, those provisions limit the *Page 275 
applicability of NASD rules to arbitration issues; they do not incorporate those rules into the entire contract. In other words, the NASD rules are not expressly incorporated into the contract other than in the provisions concerning how arbitration will be conducted.
Although the Vicks make no argument that, as a matter of public policy, a violation of an NASD rule should void an otherwise valid contract, the trial court apparently based its ruling on this proposition. However, we do not think that a violation of an NASD rule should void an otherwise valid contract.[5]
"The true test to determine whether a contract is unenforceable because of public policy is `whether the public interest is injuriously affected in such substantial manner that private rights and interests should yield to those of the public.'" Colston v. Gulf States Paper Corp., 291 Ala. 423,427, 282 So.2d 251, 255 (1973) (quoting Maddox v. Fuller, 233 Ala. 662,173 So. 12 (1937)). The NASD protects the public interest primarily by regulating its own members:
 "The NASD is a registered national securities association with congressionally delegated self-regulatory authority. As such, it is mandated to secure compliance by its members with the federal security laws as well as its own regulations, which are designed to promote ethical business behavior. 15 U.S.C. § 780-3(b)(7)."
Merrill Lynch, Pierce, Fenner Smith, Inc. v. National Ass'n ofSec. Dealers, Inc., 616 F.2d 1363, 1365 (5th Cir. 1980) (emphasis added).
The NASD rules provide that any person feeling aggrieved by an act or omission of an NASD member may file a complaint with the NASD. Sanctions for violations of rules regulating the conduct of NASD members include censure, fine, and suspension. A party aggrieved by a violation of an NASD rule may seek relief with the NASD. Therefore, the threat of sanctions to members for violating NASD rules provides substantial protection of the public interest. NASD Manual, Administrative, "Profile of the NASD," Disciplinary Procedures 153 (CCH, Inc. July 2001).
The NASD Manual states:
 "NASD disciplinary procedures are not designed to recover damages or to obtain relief for any party. Instead, they are used to promote membership compliance with high standards of commercial honor and just and equitable principles of trade by appropriately penalizing those who fail to comply. *Page 276 
". . . .
 "Depending on the nature of the violations that have occurred, NASDR[6] may sanction a member or an associated person by imposing any one or more of the following penalties: censure, fine, suspension or expulsion of a firm from membership in the NASD, or the suspension or revocation of a person's license to sell securities."
NASD Manual, Disciplinary Procedures 153. The NASD rules are designed primarily to regulate the conduct of NASD members — not contract formation; thus, we hold that the NASD rules cannot be used to void[7]
an otherwise valid and binding contract.[8]
The PaineWebber defendants have made a prima facie showing that valid contracts containing arbitration clauses existed between the parties. The burden then shifted to the Vicks to show that no such contracts existed. Because we hold that a violation of an NASD rule does not void an otherwise valid contract, and because the Vicks advance no other argument that the contracts had not been properly formed under Alabama law, the Vicks have failed to meet their burden. The order of the trial court is reversed and the case is remanded.
REVERSED AND REMANDED.
See, Lyons, Brown, Johnstone, and Stuart, JJ., concur.
Woodall, J., concurs in the result.
Moore, C.J., dissents.
[1] This action concerns investment accounts opened at J.C. Bradford Co.'s Tuscaloosa office. J.C. Bradford Co. merged with UBS PaineWebber, Inc. Nix, the Bradford broker assigned to the accounts, and Kloess, the former manager at Bradford's Tuscaloosa office, are now employed by UBS PaineWebber, Inc. As stated, for purposes of this opinion, we collectively refer to J.C. Bradford Co., all the PaineWebber entities, Nix, and Kloess as "the PaineWebber defendants." Roberts is not a party to this appeal.
[2] Our holdings in these cases derive from a decision by the United States Supreme Court. In Prima Paint Corp. v. Flood ConklinManufacturing Co., 388 U.S. 395 (1967), the United States Supreme Court held that a fraud-in-the-inducement challenge to a contract that contained an arbitration clause should be decided by an arbitrator, and not by a court. However, we follow the reasoning of other courts that limit the holding in Prima Paint Corp. to "voidable" contracts (e.g., a contract where a party is induced through fraud or a contract where a party is an infant). However, where a party challenges the very existence of a contract, that dispute must be decided by a court. See ShearsonLehman Bros. v. Crisp, 646 So.2d 613 (Ala. 1994).
[3] We are unable to find where this Court or any other court in this state has addressed this specific issue. Other jurisdictions have dealt with the issue whether an arbitration provision is void because it does not comply with NASD rules. See Nielsen v. Piper, Jaffray Hopwood,Inc., 66 F.3d 145 (7th Cir. 1995) (holding that because the arbitration clause stated that arbitration would be in accordance with NASD rules and NASD rules prohibit the arbitration of class actions, the class action could not be arbitrated); Mueske v. Piper, Jaffray Hopwood, Inc.,859 P.2d 444 (Mont. 1993) (holding that a violation of an NASD rule voided an arbitration provision because the choice-of-law provision in the contract specifically stated that NASD rules or New York Stock Exchange rules would apply); but see Cantella Co. v. Goodwin,924 S.W.2d 943 (Tex. 1996) (holding that because the NASD penalty for a violation of the specific rule was censure, suspension, expulsion, or sanctions and not avoidance of the arbitration provision, a violation of NASD rules did not void the arbitration clause). However, the case at issue here deals with whether a contract as a whole is void; that is a question answered according to Alabama contract law. Therefore, these cases are not relevant to our determination of that question.
[4] The arbitration provision in the Estate Account contract states in pertinent part:
 "[ANY ARBITRATION UNDER] THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE OF NEW YORK, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH BRADFORD IS A MEMBER OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION, YOU MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF YOU FAIL TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO BRADFORD AT ITS MAIN OFFICE, BEFORE THE EXPIRATION OF FIVE DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM BRADFORD TO MAKE SUCH ELECTION, THEN BRADFORD MAY MAKE SUCH ELECTION."
(Capitalization in original.) The arbitration provision in the Vick Account contract states in pertinent part:
 "Any arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and the laws of the state of Tennessee, before the New York Stock Exchange, Inc. or an arbitration facility provided by any other exchange of which Bradford is a member, or the National Association of Securities Dealers, Inc. and in accordance with the rules obtaining of the selected organization. I may elect in the first instance whether arbitration shall be by New York Stock Exchange, or another exchange or self-regulatory organization of which the broker is a member, but if I fail to make such election, by registered letter or telegram addressed to Bradford at its main office, before the expiration of five days after receipt of a written request from Bradford to make such election, then Bradford may make such election."
[5] During our research of this issue, we became aware of15 U.S.C. § 78cc(b), which provides that, under certain circumstances, contracts that violate any provision of the Securities Exchange Act of 1934 or any "rule or regulation thereunder" are void. The NASD is established under the Authority of the Securities Exchange Act. However, federal courts have held that 15 U.S.C. § 78cc(b) does not state that the contracts are "`void' but more properly are `voidable,' since the law in effect gives an innocent party the right to affirm or rescind." Goldman v. Bank of Commonwealth, 467 F.2d 439, 446 (6th Cir. 1972) (quoting Goldman v. Bank of Commonwealth, 332 F. Supp. 699, 706
(E.D.Mich. 1971)). We look to federal courts when interpreting federal statutes. See generally, Weems v. Jefferson-Pilot Life Ins. Co.,663 So.2d 905 (Ala. 1995). The question of the applicability of this statute has not been raised by the parties at any stage of this litigation. Therefore, we do not address it.
[6] NASDR stands for the National Association of Securities Dealers Regulations, Inc., a subsidiary of NASD. NASDR carries out NASD's regulatory responsibilities.
[7] We stress that our decision does not take into account the applicability, if any, of 15 U.S.C. § 78cc(b). See note 5.
[8] In Cariveau v. Halferty, 83 Cal.App.4th 126, 99 Cal.Rptr.2d 417
(2000), the California Court of Appeal, held, as a matter of public policy, that the violation of an NASD rule does void an otherwise binding contract. However, in that case, the contract in dispute was a settlement agreement between a securities broker and a customer. As a term of the agreement, the customer was prohibited from discussing the broker's alleged misconduct; this provision violated NASD rules. The California court held that the NASD rules were created to inform the public of misconduct of this kind, and because the settlement agreement was in direct opposition to this purpose, enforcing the agreement would violate public policy. 83 Cal.App.4th at 135-36, 99 Cal.Rptr. 2d at 423-24. In contrast, the contract at issue here does not directly violate the purposes of the NASD rules so as to affect the public interest at large. The alleged violations affect only the parties to the contract; the public in general is not adversely affected by possible violations of the NASD rules.