* Note from the reporter of decisions: The opinion was released by the Supreme Court under the date September 17, 2004. This case was actually released to the public on September 20, 2004.
Ziva Jewelry, Inc., appeals from a summary judgment in favor of Car Wash Headquarters, Inc. ("CWH"). We affirm.
 Background
Ziva Jewelry, Inc., is a jewelry wholesaler. Stewart Smith was employed by Ziva Jewelry as a traveling sales representative.[1] In connection with that employment, Smith drove his own vehicle to meet with potential customers and traveled with samples of expensive jewelry furnished to him by Ziva Jewelry. Smith testified by deposition that he knew that sales representatives in the jewelry business constantly faced the risk of robbery. Smith stated in his deposition that he was aware that a gang of thieves preyed upon traveling jewelry sales representatives. According to Smith, these thieves are aware of where and when jewelry trade shows are held, and they will follow a jewelry sales representative to and from a jewelry trade show, waiting for an opportunity to steal the jewelry. He testified that he knew that thieves were most likely to strike when the jewelry or the sales representative's car was left unattended.[2] *Page 1013 
Smith's practice was to keep the jewelry in the trunk of his vehicle while he was traveling on business.[3] He kept the trunk padlocked, and he kept the only key to the padlock on the key ring with his ignition key.
On August 10, 2000, Smith was returning from a jewelry trade show; his wife had accompanied him to the trade show. He and his wife stopped at a restaurant in Cullman to eat. While they were in the restaurant, they noticed an unidentified person peeking in the window of the restaurant.[4] After eating, the Smiths returned to their vehicle and drove to Vestavia. While in Vestavia, Smith's wife went into a store to shop and Smith went to get his car washed at Rain Tunnel Car Wash. CWH owns and operates Rain Tunnel. At Rain Tunnel, the driver leaves his vehicle with employees of the car wash, and the vehicle is sent through a wash "tunnel." Upon completion of the wash cycle, an employee drives the vehicle to another area of the car-wash premises to be hand-dried. Once the vehicle is dried, the driver is signaled to retrieve his vehicle.
Smith left his car and his keys with a car-wash employee. The jewelry was locked in the trunk. He did not advise any of the employees of the car wash of the presence of the jewelry. Smith testified that he watched the car as it went through the car-wash tunnel. He watched as the employees dried the vehicle. As he was standing at the counter waiting to pay the cashier, he saw the employee wave a flag, indicating that his car was ready for Smith. Smith then saw the employee walk away from his vehicle. While Smith was standing at the cashier counter waiting to pay, someone jumped into Smith's vehicle and sped off the car-wash premises. The police were telephoned and Smith's car was recovered 15 minutes later; it was undamaged. However, the jewelry was missing from the trunk. The value of the missing jewelry was $851,935; it was never recovered.
Ziva Jewelry sued CWH, alleging that CWH, as bailee, took possession of Smith's vehicle and of the jewelry in the vehicle, but failed to exercise due care to safeguard and to return the bailed vehicle and its contents to Smith. Ziva Jewelry also alleged that CWH breached an oral contract it entered into with Smith to safeguard, to exercise due care in regard to, and to return Smith's vehicle, including the jewelry in the vehicle, to Smith. Finally, Ziva Jewelry alleged that CWH was negligent in otherwise failing to act reasonably and prudently.
CWH moved for a summary judgment on all counts, asserting that no bailment existed as to the jewelry, that Smith had been contributorily negligent, and that CWH could not be held liable for the criminal acts of a third party. Ziva Jewelry opposed that summary-judgment motion. *Page 1014 
Ziva Jewelry argued that CWH is liable for failing to properly safeguard Smith's vehicle and that CWH failed to return Smith's vehicle in the same condition in which it received it. Ziva Jewelry also offered the deposition testimony of Chris Finley, a Rain Tunnel employee. Finley testified that, on the day of the incident, he had noticed an unidentified male on the premises of the car wash. Finley testified that he knew that this unidentified male was not an employee of Rain Tunnel and that the male did not appear to be a customer. Ziva Jewelry argued that Finley failed to report this unidentified male as a "suspicious person" and, therefore, failed to follow the procedures set forth in CWH's "manual." Ziva Jewelry also argued that Finley had acted negligently in leaving Smith's car unattended with the keys in the ignition. Finally, Ziva Jewelry offered the testimony of criminologist John Lombardi, who testified that the theft of a vehicle from the premises was foreseeable and that CWH did not comply with generally accepted principles of security and crime prevention for businesses.
Ziva Jewelry argued that because CWH took custody and control of Smith's vehicle, CWH necessarily took custody and control of the contents of Smith's vehicle. Ziva Jewelry argued that its doing so constituted a bailment of the jewelry. Ziva Jewelry also argued that Smith had entrusted his vehicle, including the jewelry, to CWH and that CWH had breached its contract to safeguard that property and to return it in the same condition in which CWH had received it.
The trial court rejected those arguments and entered a summary judgment for CWH. The trial court concluded that no bailment of the jewelry had been created. Without a bailment of the jewelry, Ziva could not establish its claims of negligent failure to safeguard the jewelry and breach of a contract to safeguard the jewelry. Ziva Jewelry appeals.
 Standard of Review
We review a summary judgment de novo. In reviewing the disposition of a motion for a summary judgment,
 "`"we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact," and whether the movant was "entitled to a judgment as a matter of law." When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.'"
Hollingsworth v. City of Rainbow City, 826 So.2d 787, 789 (Ala. 2001) (citations omitted).
 Discussion "A bailment is defined as the delivery of personal property by one person to another for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. In order for a bailment to exist the bailee must have voluntarily assumed the custody and possession of the property for another."
S/M Indus., Inc. v. Hapag-Lloyd A.G., 586 So.2d 876, 881-82
(Ala. 1991). We agree *Page 1015 
with the trial court that Smith's vehicle was the subject of a bailment. Smith delivered his vehicle to CWH for the specific purpose of having the car washed. He paid a fee for that service. As a result, CWH owed Smith a duty to use reasonable or ordinary care with regard to Smith's vehicle.
However, the above-quoted statement of the law on bailment does not answer the question whether a bailment was created as to the contents of the trunk of Smith's vehicle. The trial court correctly noted that no Alabama cases have directly addressed the issue whether a bailee is liable for the loss of contents hidden inside a bailed item. However, the trial court cited other jurisdictions that have addressed this issue. See Davidson v.Ramsby, 133 Ga.App. 128, 210 S.E.2d 245 (1974) (a bailee is not liable for the loss of the contents of a bailed vehicle when the bailee did not have actual or implied knowledge of the contents of the vehicle); Jack Boles Servs., Inc. v. Stavely,906 S.W.2d 185 (Tex.Ct.App. 1995) (a bailee is liable for lost property of which it has actual knowledge as well as property it could reasonably expect to find inside a bailed item).
The facts of this case are strikingly similar to those of JackBoles Services, supra. In Jack Boles Services, the Texas Court of Appeals addressed whether a valet-parking service was liable for a valuable painting taken when the vehicle it was in was stolen from the parking lot of a country club. The painting was hidden in the trunk of the stolen vehicle. The Texas Court of Appeals held that the valet service had no duty of care in regard to the undisclosed painting in the vehicle. That court stated:
 "The general rule in other jurisdictions is that a bailee is liable for lost property of which it has actual knowledge as well as property it could reasonably expect to find contained inside a bailed item of which it has express knowledge. . . . In Texas, similarly, a bailee is liable for the contents of a bailed vehicle if the contents were (1) in plain view when the vehicle was bailed or (2) constitute the usual, ordinary equipment of a car, such as articles contained in a trunk, which are reasonably anticipated to be there."
Jack Boles Servs., 906 S.W.2d at 188, citing, among others,Ampco Auto Parks, Inc. v. Williams, 517 S.W.2d 401, 405
(Tex.Ct.App. 1974) (recognizing that the bailee of a parked car should not reasonably be required to anticipate the presence of valuables in the trunk of a car, unless informed of the presence of those valuables: "[w]hile it might be reasonably anticipated by an operator of a parking garage that the trunk of an automobile might contain the usual objects such as spare tires, jacks, etc., it is difficult to charge one with knowledge of such valuable and extraneous objects" as were found in the car in that case).
In Jack Boles, when the parking-service employees accepted responsibility for the vehicle, they had no knowledge that a valuable painting was in the trunk. The court noted that the parking-service employees had no reason to expect that an expensive painting would be in the trunk of the vehicle. For those reasons, the court concluded that the valet-parking service could not be charged with accepting responsibility for the painting merely by accepting responsibility for the vehicle.
We agree with and adopt the reasoning of Jack Boles. In this case, Ziva Jewelry cannot establish that CWH expressly or impliedly agreed to take responsibility for the jewelry hidden inside Smith's trunk. Ziva Jewelry acknowledges that the jewelry was not plainly visible; that its presence *Page 1016 
was not made known to the car-wash employees; and that there was no reason that the employees should have expected expensive jewelry to be in the trunk of Smith's vehicle. Thus, Ziva Jewelry cannot claim that CWH knew or that it should have reasonably foreseen or expected that it was taking responsibility for over $850,000 worth of jewelry when it accepted Smith's vehicle for the purpose of washing it.
Thus, there is no evidence indicating that CWH expressly or impliedly accepted responsibility for the jewelry in the trunk of Smith's vehicle. Without express or implied acceptance by the purported bailee, a bailment cannot arise. We agree with the trial court that the breach-of-contract claims asserted by Ziva Jewelry fail as a matter of law.
We next address Ziva Jewelry's general negligence claim — that the employee of Rain Tunnel failed to follow CWH's company procedures and that this failure proximately caused the theft of Smith's vehicle and the theft of the jewelry. Ziva Jewelry specifically points out that Finley failed to report the presence of a suspicious person on the property of the car wash and that he left Smith's vehicle unattended, with the keys in the ignition. These failures, Ziva Jewelry alleges, resulted in the loss of the jewelry, when someone stole Smith's vehicle.
While it may be true that Finley failed to follow CWH's procedures, Ziva Jewelry fails to acknowledge that the criminal act of a third party intervened to cause the loss of which it complains. A third party stole the jewelry from Smith's vehicle. This Court has recognized:
 "`[T]he existence of a duty is a question of law to be determined by the trial judge. `It is the general rule in Alabama that absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person.'
 "`"Special circumstances" arise when the defendant "knew or had reason to know of a probability of conduct by [a third person] that would endanger the plaintiff." Knowledge on the part of a premises owner or manager of a probability that harm will be caused to a person on the premises, by the action of a third party, can create a duty on the part of the owner or manager to take reasonable precautions. However, while prior incidents of criminal conduct can indicate the premises owner or manager had notice that someone on the premises could be harmed by the criminal act of a third person, proof of prior criminal acts does not conclusively establish such notice.'"
New Addition Club, Inc. v. Vaughn, [Ms. 1022075, July 16, 2004] ___ So.2d ___, ___ (Ala. 2004) (citations omitted). The Court inNew Addition Club also stated:
 "In Carroll v. Shoney's, Inc., 775 So.2d 753, 756
(Ala. 2000), this Court clarified the requirements for imposing a duty upon a person for the criminal actions of another:
 "`Alabama law requires a plaintiff to show three elements to establish a duty that would be the basis for a cause of action such as the one presented in this case. . . . First, the particular criminal conduct must have been foreseeable. Second, the defendant must have possessed "specialized knowledge" of the criminal activity. Third, the criminal conduct must have been a probability.'"
___ So.2d at ___. Finally, the Court in New Addition Club noted that in order to give rise to a duty on the part of a person to protect another from the criminal acts *Page 1017 
of third parties, the particular criminal activity, not just any criminal activity, must be foreseeable. ___ So.2d at ___.
Applying these requirements to the facts of this case, we cannot impose upon CWH a duty for the criminal act of the thief in this case. We cannot say that the particular criminal conduct at issue in this case — the theft of valuable jewelry from Smith's vehicle — was foreseeable to CWH, or that CWH possessed any specialized knowledge of the criminal activity at issue or that the theft of the jewels from the vehicle was a probability. There is no evidence indicating that other similar crimes had occurred at Rain Tunnel or in the vicinity of the Rain Tunnel car wash. Additionally, CWH was unaware that the jewelry was even on its premises; consequently, it could not have foreseen the theft and it could not have had specialized knowledge of the risk of the theft. Compare Carroll v. Shoney's, Inc., 775 So.2d 753
(Ala. 2000). In Carroll, Mrs. Harris, who had been previously beaten by her husband, and confronted and threatened by her husband while she was at work at a Shoney's restaurant, asked to be excused from work the day after the confrontation because she was afraid her husband would return to her place of employment to find her. Her employer refused to grant Mrs. Harris an excused absence; while at work the next day, Mrs. Harris was shot and killed by her husband. The Court held that perhaps the employer should have foreseen an assault or battery upon Mrs. Harris, but because the employer had no specialized knowledge that Mrs. Harris's husband would shoot and kill her (the specific criminal act), the employer was not liable for the husband's criminal acts.
Ziva Jewelry argues that CWH has admitted in this case that it had a duty to protect its customers. In support of this argument, Ziva Jewelry relies on the testimony of the president of CWH, who acknowledged that CWH's employees are instructed to take certain precautions to prevent losses and thefts affecting both the car wash and the customers of the car wash. However, this testimony was unrelated to the theft of valuables from customer's vehicles and is inapplicable to the analysis in this case.
CWH had no duty to protect Ziva Jewelry from the specific criminal act at issue in this case — the theft by a third person of the jewelry belonging to Ziva Jewelry from Smith's vehicle. For these reasons, CWH cannot be liable under a negligence theory for the theft of that jewelry. We affirm the trial court's summary judgment in favor of CWH.
AFFIRMED.
NABERS, C.J., and HOUSTON, SEE, BROWN, and HARWOOD, JJ., concur.
WOODALL, J., concurs in the result.
LYONS, J., recuses himself.
[1] The parties debate whether Smith was an employee or an independent contractor. Our resolution of this case does not turn on a resolution of that question, and we express no opinion on it.
[2] In fact, Smith testified that he had been robbed while working for a previous employer. On that occasion, he had left the jewelry unattended in his car while he ate in a restaurant. He testified that a traveling jewelry sales representative was "petrified constantly."
[3] The jewelry furnished to Smith was covered under Ziva's insurance policy. However, in order for Ziva's insurance policy to be effective while the jewelry was in the sales representative's possession and in his or her car, the sales representative must be "in or upon the vehicle." Ziva described this as "either on [the representative's] person, with him in the car, or [with him] touching the car." Ziva required its sales representatives to follow this procedure at all times.
[4] Smith testified that because of the constant risk of robbery or theft he followed specific procedures when he was traveling on business. He testified that he and his wife would eat only at restaurants where they could park their vehicle right in front of a window and where they could sit within view of the vehicle.